20 A.3d 496 (2011)
R.M., Appellee
v.
J.S., Appellant
v.
J.S., Appellee.
No. 1380 WDA 2010.
Superior Court of Pennsylvania.
Argued February 15, 2011.
Filed May 6, 2011.
*498 Barbara B. Ernsberger, Pittsburgh, for appellant.
Carol S. Mills-McCarthy, Pittsburgh, for R.M., appellee.
BEFORE: BOWES, DONOHUE and SHOGAN, JJ.
OPINION BY DONOHUE, J.:
J.S. ("Father") appeals from the order entered on September 7, 2010 by the Allegheny County Court of Common Pleas, which dismissed his preliminary objections in a custody dispute. We vacate the order of the trial court and remand for further proceedings consistent with this Opinion.
Father and J.S. ("Mother") married in May of 2000 and had one child, G.S. ("Child"), age 3. Throughout the marriage, Mother has suffered from mental illness and has been both voluntarily and involuntarily hospitalized for her condition.
In 2007, the family moved from Pennsylvania to Florida. In February of 2008, Mother moved out of the marital home and into her own apartment. In October of 2008, following a brief period of hospitalization, Mother informed Father that she wanted to visit her family in Pennsylvania. From October of 2008 through March of 2009, Mother and Child resided in Pennsylvania at the home of Child's maternal grandmother, R.M. ("Maternal Grandmother"). In March of 2009, Father drove Mother and Child back to Florida from Pennsylvania. The family lived together in Florida until August 22, 2009, when Mother desired to return to Pennsylvania.
On August 22, 2009, Father drove Mother and Child to Pennsylvania. Mother and Child stayed with either Maternal Grandmother or a friend of Mother's until September 14, 2009. At that time, Mother and Child moved into an apartment. In October of 2009, Father visited Mother and Child to celebrate Child's birthday in Pennsylvania. Father returned to Florida after his short visit. Over the course of the next several months, it appears that Mother suffered from mental health issues that required Maternal Grandmother to care for Child. According to information contained in Mother's and Maternal Grandmother's complaints for custody, Child lived with Maternal Grandmother from December 9, 2009 through December 24, 2009, and again from January 14, 2010 through March 5, 2010.
*499 On January 31, 2010, Maternal Grandmother took Child to see Mother, at which time Mother had a "mental episode," and would not let Maternal Grandmother leave the house with Child. CYF Dependency Petition, 2/25/10, at 1. Maternal Grandmother called the police, who in turn called Allegheny County Office of Children, Youth and Families ("CYF"). CYF obtained emergency custody of Child. A shelter hearing was held on February 5, 2010, at which time the trial court placed Child in Maternal Grandmother's home. Neither parent was in attendanceFather was not notified of the hearing, and Mother's whereabouts were unknown, as she left Forbes Regional Hospital against medical advice.
On February 27, 2010, Father received notice from CYF regarding a dependency hearing. In the dependency petition, CYF reported that it "had minimal information in regards to [Father] besides him moving to Florida 3 years ago," and that Father "has not had any contact with [Child]." Id. at 2. At the dependency hearing, the juvenile court found Child not to be a dependent child and returned custody of Child to Father. Father and Child went home to Florida on March 5, 2010.
According to Father, on March 12, 2010, he received a complaint in support filed by Mother, which he stated was his first indication that she did not intend to return to their marriage. On April 8, 2010, Mother filed a complaint for custody of Child. On April 29, 2010, Maternal Grandmother filed a petition for standing to file a complaint for custody of Child, along with a complaint for custody of Child. That same day, the trial court issued an order granting Maternal Grandmother standing to file her complaint. On May 12, 2010, Father filed preliminary objections to Mother's complaint, challenging the jurisdiction of the trial court over the custody dispute. Father filed preliminary objections to Maternal Grandmother's complaint on May 17, 2010, again raising jurisdictional arguments and further arguing that Maternal Grandmother does not have standing to file a custody complaint. Subsequent to Mother and Maternal Grandmother filing their complaints for custody in Pennsylvania, Father filed for divorce from Mother and for custody of Child in Florida. That action was stayed pending the outcome of the matter in Pennsylvania.
On August 12, 2010, the trial court entered its order denying Father's preliminary objections without a hearing. The trial court entered an amended order on September 7, 2010, clarifying that the matter raises a substantial issue of jurisdiction, making the matter appealable as a matter of right pursuant to Pa.R.A.P. 311(b)(2).[1]
On September 8, 2010, Father filed a timely appeal from the trial court's order, along with a concise statement of errors complained of on appeal pursuant to Pa. R.A.P. 1925(a)(2). In his brief on appeal, Father presents the following issues for review:
I. Whether the [trial court] erred when it denied the preliminary objections of [Father], as to the court's jurisdiction in both the custody action of [Mother] and the custody action of [Maternal Grandmother], and found the Commonwealth of Pennsylvania is the child's home state as defined in 23 Pa.C.S.A. § 5402.

*500 II. Whether the [trial court] erred when it denied the preliminary objections of [Father] and, therefore, failed to decline to exercise jurisdiction of the court by reason of the unjustifiable conduct of both [Maternal Grandmother and Mother], pursuant to 23 Pa.C.S.A. § 5428(a)(2).
III. Whether the [trial court] erred when it did not conduct a hearing to receive evidence regarding the jurisdiction of the court where the preliminary objections of [Father] raised objections to both Mother [sic] and Maternal Grandmother's complaint for custody asserting that the State of Florida is the child's home state and, therefore, there were disputed facts as to the child's home state.
IV. Whether the [trial court] erred in denying the preliminary objections of [Father] which raised objections to Maternal Grandmother's standing to bring a custody action pursuant to 23 Pa.C.S.A. § 5312 and/or 23 Pa.C.S.A. § 5313 and granting Maternal Grandmother standing to bring an action for custody when there was a factual dispute as to the date of separation of the parents.
Father's Brief at 4-5.[2]

I. Home State

In his first issue on appeal, Father asserts that the trial court erred in dismissing his preliminary objections and concluding that Pennsylvania is Child's home state pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), 23 Pa.C.S.A. §§ 5401-5482. Father's Brief at 20-28. Father argues that, at the very least, a hearing was required as there are contested issues of fact regarding the trial court's jurisdiction to hear the custody matter. Id.
"Our standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law." Stanley-Laman Group, Ltd. v. Hyldahl, 939 A.2d 378, 382 (Pa.Super.2007) (citation omitted). "In ruling on whether preliminary objections should have been granted, an appellate court must determine whether it is clear from doubt from all the facts pleaded that the pleader will be unable to prove facts legally sufficient to establish a right to relief." R.M. v. Baxter ex rel. T.M., 565 Pa. 619, 624, 777 A.2d 446, 449 (2001) (citation omitted). Our standard of review for questions involving jurisdiction is as follows:
A court's decision to exercise or decline jurisdiction is subject to an abuse of discretion standard of review and will not be disturbed absent an abuse of that discretion. Under Pennsylvania law, an abuse of discretion occurs when the court has overridden or misapplied the law, when its judgment is manifestly unreasonable, or when there is insufficient evidence of record to support the court's findings. An abuse of discretion requires clear and convincing evidence that the trial court misapplied the law or failed to follow proper legal procedures.
Wagner v. Wagner, 887 A.2d 282, 285 (Pa.Super.2005).
The determination of jurisdiction in a custody dispute is governed by the UCCJEA, which provides, in relevant part:
§ 5421. Initial child custody jurisdiction
(a) General Rule.Except as otherwise provided in section 5424 (relating to *501 temporary emergency jurisdiction), a court of this Commonwealth has jurisdiction to make an initial child custody determination only if:
(1) this Commonwealth is the home state of the child on the date of the commencement of the proceeding or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this Commonwealth but a parent or person acting as a parent continues to live in this Commonwealth;
(2) a court of another state does not have jurisdiction under paragraph (1) or a court of the home state of the child has declined to exercise jurisdiction on the ground that this Commonwealth is the more appropriate forum under section 5427 (relating to inconvenient forum) or 5428 (relating to jurisdiction declined by reason of conduct) and:
(i) the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this Commonwealth other than mere physical presence; and
(ii) substantial evidence is available in this Commonwealth concerning the child's care, protection, training and personal relationships.
(3) all courts having jurisdiction under paragraph (1) or (2) have declined to exercise jurisdiction on the ground that a court of this Commonwealth is the more appropriate forum to determine the custody of the child under section 5427 or 5428; or
(4) no court of any other state would have jurisdiction under the criteria specified in paragraph (1), (2), or (3).
(b) Exclusive jurisdictional basis.Subsection (a) is the exclusive jurisdictional basis for making a child custody determination by a court of this Commonwealth.
(c) Physical presence and personal jurisdiction unnecessary.Physical presence of or personal jurisdiction over a party or a child is not necessary or sufficient to make a child custody determination.
23 Pa.C.S.A. § 5421.
The child's home state is the preferred basis for determining jurisdiction. McCoy v. Thresh, 862 A.2d 109, 113 (Pa.Super.2004). The UCCJEA defines "home state" as:
The state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. In the case of a child six months of age or younger, the term means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period.
23 Pa.C.S.A. § 5402. Father argues that Pennsylvania is not Child's home state for several reasons: (1) Child was living in Florida for a month prior to the filing of the custody complaints, and thus Pennsylvania was not Child's home state "immediately" preceding the initiation of custody proceedings; (2) Child lived with Maternal Grandmother for approximately half of the time she was in Pennsylvania, and she does not qualify as a "person acting as a parent"; and (3) Mother and Child were in Pennsylvania on a temporary basis. Father's Brief at 23-28. We address each argument seriatim.

*502 "Immediately Before"

Father first argues that Pennsylvania cannot be Child's home state, as Child was living in Florida for a month prior to Mother filing her custody petition, and thus did not live in Pennsylvania for "six consecutive months immediately before the commencement of a child custody proceeding." Father's Brief at 21-23; 23 Pa. C.S.A. § 5402. The trial court found that Pennsylvania was Child's "home state" pursuant to the UCCJEA based upon the fact that she "lived with a parent or person acting as a parent" in Pennsylvania for six consecutive months within six months of the commencement of custody proceedings. Trial Court Opinion, 10/26/10, at 5-6. Although it acknowledged that at the time Mother's custody complaint was filed Child had been living in Florida for approximately one month, the trial court found that a literal interpretation of the word "immediately" in defining Child's home state was unnecessary because, inter alia, it would render the language "was the home state of the child within six months before the commencement of the proceeding" in section 5421(a)(1) superfluous. Id. at 6.
Our research reveals that no case has addressed this issue in Pennsylvania, but that there appears to be a conflict on the face of the two statutes. In section 5402, "home state" is defined as the state the Child lived for "six consecutive months immediately before the commencement of a child custody proceeding." 23 Pa.C.S.A. § 5402 (emphasis added). The indication in section 5421(a)(1), however, is that Pennsylvania has home state jurisdiction over a custody matter if it was the child's home state "within six months before the commencement of the proceeding[.]" 23 Pa.C.S.A. § 5421(a)(1) (emphasis added). Because of this apparent ambiguity, we turn to review the history behind the UCCJEA in an attempt to ascertain the intent of the Legislature. See In re Martin's Estate, 365 Pa. 280, 283, 74 A.2d 120, 122 (1950); 1 Pa.C.S.A. § 1921(c).[3]
The predecessor to the UCCJEA, the Uniform Child Custody Jurisdiction Act ("UCCJA"), 23 Pa.C.S.A. §§ 5341-5366 (repealed June 15, 2004), was created in an in an attempt to establish consistency in the way different jurisdictions address interstate custody matters. It was enacted in Pennsylvania in 1977, and adopted in some form by all 50 states, the District of Columbia, and the Virgin Islands. 23 Pa. C.S.A., Pt. VI, Ch. 54, Refs. & Annos. (Uniform Law Comments).
Because of variations in the adoption and interpretation of the UCCJA by state courts throughout the country, the federal government enacted the Parental Kidnapping Prevention Act ("PKPA"), 28 U.S.C. § 1738A, in 1980 in the hopes of addressing the continuing problems relating to custody jurisdiction. The PKPA requires that states give full faith and credit to another jurisdiction's child custody determination made in compliance with the provisions of the PKPA. See 28 U.S.C. *503 § 1738A. Although the PKPA was, in large part, very similar to the UCCJA, there were some differences and additions that the UCCJA did not address.
The American Bar Association's Center on Children and the Law conducted an extensive study on this area of the law, and determined that inconsistencies among the states in their interpretations of the UCCJA and applications of the PKPA resulted in a lack of uniformity in how to make a jurisdictional determination for child custody proceedings. 23 Pa.C.S.A., Pt. VI, Ch. 54, Refs. & Annos. (Uniform Law Comments). As a result, the UCCJEA was created (adopted in Pennsylvania in 2004), providing clearer standards for the determination of jurisdiction in a child custody proceeding throughout the life of the proceeding.[4]See id. One change, relevant to our discussion herein, was the prioritization of home state jurisdiction:
The jurisdiction of the home state has been prioritized over other jurisdictional bases. Section 3 of the UCCJA provided four independent and concurrent bases of jurisdiction. The PKPA provides that full faith and credit can only be given to an initial custody determination of a `significant connection' state when there is no home state. This Act prioritizes home state jurisdiction in the same manner as the PKPA thereby eliminating any potential conflict between the two acts.
23 Pa.C.S.A. § 5421 (Uniform Law Comment).
With this in mind, we observe that the definition of "home state" under the PKPA is substantively identical to the definition contained in the UCCJEA.[5]Compare 23 Pa.C.S.A. § 5402 with 28 U.S.C.A. § 1738A(b)(4). We further observe that the "within six months" provision is present in both the PKPA and the UCCJA for determining a state's jurisdiction over the child custody matter. See 28 U.S.C. § 1738(A)(c)(2)(A)(ii); 23 Pa.C.S.A. § 5344(a)(1)(ii). According to the Comment to section 5421, there is no substantive difference between the UCCJEA, the UCCJA, and the PKPA as it relates to the timing requirement for determining a state's jurisdiction. 23 Pa.C.S.A. § 5421 (Uniform Law Comment). Moreover, the Comment refers to this portion of the law as the "six-month extended home state provision of subsection (a)(1)." Id. (emphasis added).
By giving effect to the extended home state provision of section 5421(a)(1), the likelihood that a state would be able to exercise home state jurisdiction over a child is substantially increased. And because a child must live in a state for six consecutive months for that state to have home state jurisdiction pursuant to the UCCJEA, there is no potential for conflict between two states claiming to have home state jurisdiction. This leads us to believe that the two sections are not, in fact, in conflict. Rather, we conclude, based upon stated the legislative purpose of prioritizing home state jurisdiction and the history *504 behind the UCCJEA, it was the intent of the General Assembly that there be a six month window for a state to establish home state jurisdiction in circumstances where a child is no longer in Pennsylvania at the time the custody action commences.
The record reflects that Child was in Pennsylvania from August 22, 2009 until March 5, 2010, and that Mother commenced her custody action on April 8, 2010. Complaint for Custody (Mother), 4/8/10, at ¶ 3. Therefore, we find that the "extended six month home state provision" of section 5421(a)(1) arguably applies to the case at bar. As such, Father's argument on this issue lacks merit.

"Person Acting As A Parent"
In the alternative, Father argues that Pennsylvania is not Child's home state because Child was not living with Mother for the entirety of the six months that Child was in Pennsylvania, and Maternal Grandmother does not qualify as "a person acting as a parent."[6] Father's Brief at 23-26. This is also an issue of first impression in Pennsylvania.
A person acting as a parent is defined as:
A person, other than a parent, who:
(1) has physical custody of the child or has had physical custody for a period of six consecutive months, including any temporary absence, within one year immediately before the commencement of a child custody proceeding; and
(2) has been awarded legal custody by a court or claims a right to legal custody under the laws of this Commonwealth.
23 Pa.C.S.A. § 5402.
At the outset, we note that it is uncontested that Child lived with Maternal Grandmother from December 9, 2009 through December 24, 2009, and from January 15, 2010 through March 5, 2010, for a total period of 64 days, or just over two months. See Complaint for Custody, 4/8/10 & 4/29/10, at ¶ 3. Maternal Grandmother neither had physical custody of Child for six consecutive months, nor was she ever awarded legal custody of Child. Thus, Father is correct that Maternal Grandmother does not qualify as "a person acting as a parent." 23 Pa.C.S.A. § 5402. Nonetheless, relying on the holding in Wagner v. Wagner, 887 A.2d 282 (Pa.Super.2005), Mother and Maternal Grandmother assert that although Child "spent periods of time" with Maternal Grandmother, this does not defeat the residency requirement, as Child "was in the constructive custody of Mother when she permitted [Child] to spend time with her grandparents." Mother's and Maternal Grandmother's Brief at 6.
We have reviewed the Wagner case and disagree that it provides support for Mother's and Maternal Grandmother's argument. Wagner involved a petition for modification of a custody order that had originally been entered in Pennsylvania. Although Pennsylvania had jurisdiction to enter the original custody order, both parents moved from Pennsylvania prior to the father filing a request for modification, leaving its continuing jurisdiction over the custody matter in question.[7] The mother filed a motion to transfer the case to Florida, which was denied by the trial court. The Pennsylvania trial court granted the father primary physical custody, and the mother appealed. On appeal, this Court *505 determined, inter alia, that Pennsylvania was not the children's home state pursuant to section 5421(a), as no parent continued to reside in the jurisdiction. While we recognized that the children often visited their paternal grandmother in Pennsylvania, she was not a "person acting as a parent" as defined in the UCCJEA. Wagner, 887 A.2d at 288.
In the case sub judice, Mother and Maternal Grandmother contend that in holding that the paternal grandmother was not a "person acting as a parent," the Wagner Court "implied" that the children "were really in Father's custody at those times." Mother's and Maternal Grandmother's Brief at 6 (citing Wagner, 887 A.2d at 287). We have thoroughly reviewed the Wagner decision and disagree that this Court made any such holding, by implication or otherwise. Wagner does not indicate that either parent was considered to have custody of the children while they were visiting their paternal grandmother. Indeed, the children could have technically been in either parent's "constructive custody" at the time they were visiting with their paternal grandmother. We therefore agree with the argument in Father's reply brief that "based upon the logic of [a]ppellees' argument, it could easily be said that Child was also in constructive custody of [F]ather for the entirety of the time Child was under the care of [Maternal] Grandmother." Father's Reply Brief at 2.
There is no case law that interprets the relevant portion of section 5402 of the UCCJEA. The pertinent language of the statute, however, is clear and unambiguousa child's home state is established if the child "lived with a parent" in that state for six consecutive months prior to the filing of a custody matter. 23 Pa. C.S.A. § 5402 (emphasis added).
"The basic tenet of statutory construction requires a court to construe the words of the statute according to their plain meaning." Grom v. Burgoon, 448 Pa.Super. 616, 672 A.2d 823, 825 (1996). "Words and phrases shall be construed according to rules of grammar and according to their common and approved usage[.]" 1 Pa. C.S.A. § 1903. "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b).
Although on appeal Mother and Maternal Grandmother state that Child merely "spent periods of time" with Maternal Grandmother, Mother's and Maternal Grandmother's Brief at 6, this statement is neither supported by the record nor conforms to the statements made in their respective complaints for custody. The record reflects that Child was judicially removed from Mother's care and placed in Maternal Grandmother's home for one of the six months at issue. CYF Dependency Petition, 2/25/10, at 2; N.T., 3/5/10, at 58. Furthermore, both Mother and Maternal Grandmother admitted in their respective complaints for custody that Child "resided" with Maternal Grandmother for over two months while Child was in Pennsylvania. Complaint for Custody, 4/8/10 & 4/29/10, at ¶ 3. The word "reside" is synonymous with the word "live." See WEBSTER'S II DICTIONARY 417, 605 (3d ed.2005).
The record reflects that Child was physically present in Pennsylvania from August 22, 2009 until March 5, 2010. Complaint for Custody, 4/8/10 & 4/29/10, at ¶ 3. According to Maternal Grandmother's and Mother's complaints, Child only "lived with a parent" from August 22, 2009 through December 9, 2009, and December 24, 2009 through January 15, 2010a total period of 131 days, or just over four months. Id. We therefore find that the trial court abused its discretion and committed an *506 error of law by determining that Pennsylvania is Child's home state.

Temporary Absence from Florida
This does not end our inquiry into whether Pennsylvania appropriately exercised jurisdiction over the custody matter.[8] The question now turns on whether Florida is Child's home state. If Florida is Child's home state, then, pursuant to 23 Pa.C.S.A. § 5421(2), jurisdiction properly lies in Florida. If Florida is not Child's home state, then Child has no home state, and the trial court must determine whether Florida or Pennsylvania has the "maximum significant contacts" to decide in which state jurisdiction properly lies. 23 Pa.C.S.A. § 5421(2); see Dincer v. Dincer, 549 Pa. 309, 319, 701 A.2d 210, 215 (1997).[9] We agree with Father that this depends on the nature of Mother's presence in Pennsylvaniawhether it was intended to be temporary or permanent.
Father asserts that the trial court erred by failing to hold a hearing to determine whether Mother's relocation to Pennsylvania was temporary before deciding that Pennsylvania had home state jurisdiction. Father's Brief at 26-28. In support of his argument, Father relies on the case of Bouzos-Reilly v. Reilly, 980 A.2d 643 (2009).
Bouzos-Reilly involved an interstate custody dispute over a five-and-a-half month old child. The child was born in New York and lived there with both of his parents for the first three months of his life. Id. at 645. The mother moved with the child to Pennsylvania to be with her family after she had an altercation with the father. After the father refused certain conditions set forth by the mother to guarantee her safety in New York, the mother filed a complaint for custody in Pennsylvania. At that time, the child had been living with his mother in Pennsylvania for approximately three-and-a-half months. The father filed a motion to dismiss the custody complaint on the basis that Pennsylvania lacked jurisdiction, arguing that New York was the child's home state. Following a teleconference with the parties' counsel, the Pennsylvania judge, and the New York judge, the Pennsylvania judge granted the father's motion to dismiss. Id. at 646.
On appeal, this Court reversed and remanded the case to the Pennsylvania trial court for a hearing on whether the mother's move to Pennsylvania was only a "temporary" move. In so ruling, we stated:
If there is to be a determination that the move to Pennsylvania was only temporary, this cannot be determined by the pleadings, but only after a hearing with testimony from Mother and Father and after the judge has made credibility findings. Since the motion to dismiss was filed in Pennsylvania, it is the obligation of the Pennsylvania court to make its own determination as to whether the move was temporary after hearing relevant witnesses. Since the child in its first five-and-one-half months of life, before the custody petition was filed, lived in both New York (with both parents) and Pennsylvania (with Mother), there is no clear cut home state according to the language of section *507 5420 [sic] unless there is a finding that Mother's move was only temporary.
Id. (emphasis in the original).
Turning to the instant case, the trial court found Bouzos-Reilly to be inapplicable. It believed that a finding regarding the nature of the mother's move in Bouzos-Reilly was only necessary because the child had no home state based on his age and the nearly equal split of time he spent in New York and Pennsylvania. Trial Court Opinion, 10/26/10, at 10-11 n. 5. In other words, the trial court found that a determination of whether a parent's move to another jurisdiction was only intended to be "temporary" is unnecessary where the child has been in that new jurisdiction for the requisite six months, regardless of the parent's intention. For the reasons that follow, we disagree.
First, the trial court's decision completely ignores the plain language of the statute defining "home state." As noted above, section 5402 explicitly states that "[a] period of temporary absence of any of the mentioned persons is part of the [six month] period." 23 Pa.C.S.A. § 5402. Thus, for home state determination, the law is clear that if a parent leaves one state temporarily and takes the child to another state, no matter for how long, the child is still considered as having "lived" in the first state during the time of that temporary absence.
Furthermore, subsequent to Bouzos-Reilly, this Court discussed the requirement that the trial court make findings with respect to the temporary or permanent nature of a parent's stay in another state for jurisdictional purposes. See J.M.R. v. J.M., 1 A.3d 902, 910 (Pa.Super.2010). J.M.R. involved the modification of a custody order that was originally entered in Maryland, where the parties had lived together with their child until they separated. Upon separation, the mother moved to York, Pennsylvania. Thereafter, the father "temporarily" relocated to Erie, Pennsylvania to assist in the medical treatment of his girlfriend's daughter. The father subsequently informed the mother that he was not returning to Maryland, and that she would not see the child pursuant to the standing custody order. The mother filed a complaint for custody in Pennsylvania, and the father filed preliminary objections on the basis, inter alia, that Pennsylvania did not have jurisdiction because his move from Maryland was only temporary. The trial court denied the father's preliminary objections, and granted primary physical custody of the child to the mother.
On appeal, this Court affirmed. Without reference to the fact that the child, born in 2004, had been in Pennsylvania for the requisite six months, we found that the trial court properly determined that Pennsylvania had home state jurisdiction pursuant to section 5421(a)(1) where, crediting the mother's testimony, the trial court found that the father had permanently relocated to Pennsylvania. Id.
Based upon existing precedent and the plain language of section 5402, where there is a question of whether a parent's relocation to another jurisdiction is temporary and the pleadings are insufficient to make such a determination, an evidentiary hearing on the issue must be held. See 23 Pa.C.S.A. § 5402; Bouzos-Reilly, 980 A.2d at 646; J.M.R., 1 A.3d at 910. In the case at bar, if Mother's absence from Florida was "temporary," Florida is Child's "home state," as the time she spent in Pennsylvania with Child is attributable to Florida for jurisdictional purposes. 23 Pa.C.S.A. § 5402. If Mother's absence was not "temporary," then, as stated above, Child has no home state, and the trial court must undertake a "maximum significant contacts" *508 analysis. Dincer, 549 Pa. at 319, 701 A.2d at 215; Bouzos-Reilly, 980 A.2d at 646.
The trial court did not hold a hearing to determine whether Mother's absence from the State of Florida was intended to be temporary or permanent. We therefore remand the case to the trial court for a hearing to determine whether Mother's stay in Pennsylvania was "temporary."

II. "Unjustifiable Conduct"[10]
Father further argues that the trial court erred by failing to hold a hearing to determine whether it should have declined jurisdiction based upon Mother's and Maternal Grandmother's "unjustifiable conduct" pursuant to 23 Pa.C.S.A. § 5428. Father's Brief at 28-32. Specifically, Father asserts that Mother and Maternal Grandmother failed to inform him of Mother's deteriorating mental health, and that they intentionally kept this information and Child's living situation from Father in order to have Child remain in Pennsylvania.
Section 5428 provides, in relevant part, as follows:
Jurisdiction declined by reason of conduct
(a) General rule.Except as otherwise provided in section 5424 (relating to temporary emergency jurisdiction) or by other laws of this Commonwealth, if a court of this Commonwealth has jurisdiction under this chapter because a person seeking to invoke its jurisdiction has engaged in unjustifiable conduct, the court shall decline to exercise its jurisdiction unless:
(1) the parents and all persons acting as parents have acquiesced in the exercise of jurisdiction;
(2) a court of the state otherwise having jurisdiction under sections 5421 (relating to initial child custody jurisdiction) through 5423 (relating to jurisdiction to modify determination) determines that this Commonwealth is a more appropriate forum under section 5427 (relating to inconvenient forum); or
(3) no court of any other state would have jurisdiction under the criteria specified in sections 5421 through 5423.
23 Pa.C.S.A. § 5428(a).
In identical portions of their respective responses to Father's preliminary objections, Mother and Maternal Grandmother deny Father's allegations. See Mother's and Maternal Grandmother's Briefs in Opposition to Father's Preliminary Objections, 8/3/10, at 5. Based on Mother's and Maternal Grandmother's averments of no improper conduct, the trial court denied Father's preliminary objection without a hearing and resolved the factual dispute in favor of Mother and Maternal Grandmother as the non-moving parties. Trial Court Opinion, 10/26/10, at 14-15.
"When no issues of fact are raised, the court shall dispose of the preliminary *509 objections as a matter of law on the basis of the pleadings alone." Matter of D.L.S., 278 Pa.Super. 446, 420 A.2d 625, 626 (1980). Where preliminary objections raise issues of fact, however, the Rules of Civil Procedure provide that "the court shall consider evidence by depositions or otherwise." Pa.R.C.P. 1028(c)(2); see also Deyarmin v. Consol. Rail Corp., 931 A.2d 1, 14 (Pa.Super.2007) ("[I]f an issue of fact is raised by preliminary objections . . . the [trial] court may not reach a determination based upon its view of the controverted facts, but must resolve the dispute by receiving evidence thereon through interrogatories, depositions or an evidentiary hearing.") (citation omitted).
The record reflects that Father properly raised the issue of Mother's and Maternal Grandmother's alleged "unjustifiable conduct" in his preliminary objections, and Mother and Grandmother declined that they engaged in such conduct. See Preliminary Objections (Mother), 5/12/10, at ¶¶ 49-56; Preliminary Objections (Maternal Grandmother), 5/17/10, at ¶¶ 84-91; Mother's and Maternal Grandmother's Briefs in Opposition to Father's Preliminary Objections, 8/3/10, at 5. Thus, Father raised an issue of fact regarding whether Mother and Maternal Grandmother engaged in unjustifiable conduct by failing to inform him of Mother's deteriorated mental health status and inability to care for Child.
We therefore conclude that the trial court erred in failing to hold a hearing or receive evidence on the issue of Mother's and Maternal Grandmother's alleged "unjustifiable conduct."[11] As such, if the trial court determines, after an evidentiary hearing, that it has jurisdiction over the custody matter, it must then determine whether it should nonetheless decline jurisdiction based upon the alleged unjustifiable conduct of Mother and Maternal Grandmother pursuant to 23 Pa.C.S.A. § 5428.

III. Hearing on Preliminary Objections
As indicated supra, we find the trial court erred by failing to hold an evidentiary hearing on the nature of Mother's absence from the State of Florida and on Mother's and Maternal Grandmother's alleged "unjustifiable conduct" raised in Father's preliminary objections.

IV. Maternal Grandmother's Standing
Lastly, Father argues that the trial court erred by determining that Maternal Grandmother has standing to bring an action for custody. Father's Brief at 32-38. The trial court found that Maternal Grandmother has standing to file a custody complaint pursuant sections 5312 and 5313(b) of the Custody and Grandparent Visitation Act, 23 Pa.C.S.A. §§ 5301-5315 (repealed November 23, 2010). Trial Court Opinion, 10/26/10, at 10. We address each section of the statute in turn.

Section 5312
Section 5312, which was in effect at the time Maternal Grandmother filed for standing in this case, states:
When parents' marriage is dissolved or parents are separated
In all proceedings for dissolution, subsequent to the commencement of the proceeding *510 and continuing thereafter or when parents have been separated for six months or more, the court may, upon application of the parent or grandparent of a party, grant reasonable partial custody or visitation rights, or both, to the unmarried child if it finds that visitation rights or partial custody, or both, would be in the best interest of the child and would not interfere with the parent-child relationship. The court shall consider the amount of personal contact between the parents or grandparents of the party and the child prior to the application.
23 Pa.C.S.A. § 5312.[12]
Father appears to argue that grandparent standing to file for partial custody or visitation is governed solely by 23 Pa.C.S.A. § 5313(a),[13] and because Child did not live with Maternal Grandmother for the requisite 12 months, Maternal Grandmother lacks standing to file for partial custody or visitation. Father's Brief at 33. Father does not address Maternal Grandmother's standing to file for partial custody or visitation pursuant to section 5312 in his appellate brief. Although arguments not developed on appeal are generally waived, see Lackner v. Glosser, 892 A.2d 21, 29-30 (Pa.Super.2006), it is well-established that standing is a jurisdictional prerequisite in a grandparent visitation action. Grom, 672 A.2d at 824-25. As it is a question of the trial court's subject matter jurisdiction, it "may be raised at any time, by any party, or by the court sua sponte." Id. We therefore address Maternal Grandmother's standing pursuant to section 5312.
Courts of this Commonwealth have routinely held that section 5312 confers standing on a grandparent who meets certain jurisdictional prerequisites. In Schmehl v. Wegelin, 592 Pa. 581, 927 A.2d 183 (2007), for example, our Supreme Court stated that section 5312 "enables grandparents to seek partial custody or visitation of their grandchild when the child's parents are divorced, engaged in divorce proceedings, or have been separated for six months or *511 more." Id. at 584, 927 A.2d at 184; see also Malone v. Stonerook, 843 A.2d 1278, 1280-81 (Pa.Super.2004) ("The language of section 5312 clearly and unambiguously provides that the grandparents of a child whose parents are divorced, involved in dissolution proceedings or have been separated for six months or more may maintain an action for visitation or partial custody.").
The trial court found that Maternal Grandmother has standing pursuant to 5312 based upon her claim that Mother and Father separated in February of 2008 and the fact that Mother filed for child support in October of 2009, thus providing a period of separation for at least six months. Trial Court Opinion, 10/26/10, at 11. In his preliminary objections to Maternal Grandmother's complaint, however, Father asserts that Mother and he were not separated for the requisite six months, as he was only notified of her intention not to return to the marriage on March 12, 2010, when he received a copy of Mother's complaint for support. Preliminary Objections (Maternal Grandmother), 5/17/10, at ¶¶ 55-58.
The trial court failed to hold a hearing on this contested issue of fact, which was error. See Pa.R.C.P. 1028(c)(2); Deyarmin, 931 A.2d at 14. Thus, in the event the trial court determines that it has jurisdiction and will exercise jurisdiction over the custody matter, the trial court shall then hold a hearing to determine whether Maternal Grandmother has standing to file for partial custody and visitation pursuant to 23 Pa.C.S.A. § 5312.

Section 5313(b)
The trial court also found that Maternal Grandmother has standing to file for full physical and legal custody of Child pursuant to section 5313(b). This statute, which was likewise in effect at the time Maternal Grandmother petitioned the trial court for standing, states:
When grandparents may petition.
* * *
(b) Physical and legal custody.A grandparent has standing to bring a petition for physical and legal custody of a grandchild. If it is in the best interest of the child not to be in the custody of either parent and if it is in the best interest of the child to be in the custody of the grandparent, the court may award physical and legal custody to the grandparent. This subsection applies to a grandparent
(1) who has genuine care and concern for the child;
(2) whose relationship with the child began with the consent of a parent of the child or pursuant to an order of court; and
(3) who for 12 months has assumed the role and responsibilities of the child's parent, providing for the physical, emotional and social needs of the child, or who assumes the responsibility for a child who has been determined to be a dependent child pursuant to 42 Pa.C.S. Ch. 63 (relating to juvenile matters) or who assumes or deems it necessary to assume responsibility for a child who is substantially at risk due to parental abuse, neglect, drug or alcohol abuse or mental illness. The court may issue a temporary order pursuant to this section.
23 Pa.C.S.A. § 5313(b). Subsection (b) was added to section 5313 in 1996. Id. (Historical and Statutory Notes).
In R.M. v. Baxter ex rel. T.M., 565 Pa. 619, 777 A.2d 446 (2001), our Supreme Court granted allowance of appeal to determine "whether 23 Pa.C.S. § 5313 confers standing upon a grandparent to file a *512 complaint for custody and/or visitation of a grandchild after the child has been adjudicated dependent." Id. at 621, 777 A.2d at 446. Appellants contended that a grandparent only has standing to file for physical and/or legal custody of a grandchild if the grandparent satisfied all of the requirements listed in 23 Pa.C.S.A. § 5313(b)(1)-(3). The grandmother, on the other hand, argued that she had automatic standing to file for physical and legal custody of her grandchild pursuant to section 5313(b) "simply by virtue of the familial relationship." Id. at 626, 777 A.2d at 450-51.
In attempting to decipher the Legislature's intent when authoring section 5313(b), the Supreme Court agreed with grandmother's "interpretation" that the statute confers automatic standing upon a grandparent to file for custody of a grandchild. Id. at 626, 777 A.2d at 451.
The unqualified language of the statute states, `A grandparent has standing to bring a petition for physical and legal custody of a grandchild.' This clear and unambiguous pronouncement cannot be ignored or modified by the subsequent reference to whom the provision, as a whole, is intended to apply. It is well settled that words and phrases contained in a statute shall be construed according to rules of grammar and according to their common and approved usage. When the words of a statute are clear and free from ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. The language providing that, `This subsection applies to a grandparent who . . .,' refers to the requirements a grandparent must establish to prevail on the merits of the custody claim. This is evidenced by the fact that `this subsection' is entitled, `Physical and legal custody,' rather than `Standing.'
Id. at 626-27, 777 A.2d at 451.
Thereafter, in K.B. II v. C.B.F., 833 A.2d 767 (Pa.Super.2003), this Court has applied the holding in R.M. v. Baxter to a case involving a non-dependent child:
Following our careful reading of Section 5313(b), in light of our Supreme Court's holding in R.M. v. Baxter, supra, we are constrained to conclude that the statute confers automatic standing on any grandparent seeking physical and legal custody of his or her grandchildren, regardless of whether there has been a prior determination of unfitness by the parent or dependency of the child.
Id. at 775. Our Supreme Court once again granted allowance of appeal to take another look section 5313(b) in order to determine "[w]hether grandparents have standing to seek custody under 23 Pa.C.S. § 5313(b) absent a finding that the child is substantially at risk, or that the parent is unfit, or that the child is dependent." K.B. II v. C.B.F., 577 Pa. 135, 842 A.2d 917 (2004). The appeal was subsequently dismissed, however, as having been improvidently granted. K.B. v. C.B.F., 584 Pa. 538, 885 A.2d 983 (2005).
Father argues that Maternal Grandmother does not have standing to file for full custody of Child because section 5313(b)(3) is not met: Child did not live with Maternal Grandmother for 12 months, Child was not adjudicated dependent, and there are no allegations that Child is at risk in Father's care. Father's Brief at 34. As indicated above, our Supreme Court and a prior panel of this Court made clear that a grandparent has automatic standing to file for full custody of a grandchild pursuant to section 5313.[14] *513 As we are bound by this precedent, Father's argument on standing is without merit. See Maycock v. Gravely Corp., 352 Pa.Super. 421, 508 A.2d 330, 332 (1986) ("Needless to say, the Superior Court cannot overrule Supreme Court decisions."); Fratangelo v. Fratangelo, 360 Pa.Super. 487, 520 A.2d 1195, 1202 (1987) ("the Superior Court [] cannot overrule the published finding of an earlier panel.").[15]
We agree with Father, however, that Maternal Grandmother's complaint was legally insufficient, as she failed to include the criteria set forth in subsection (b)(3) in her pleadings. Father's Brief at 35-36. As previously stated, in order to prevail on the merits of a custody claim, the grandparent must satisfy all of the requirements listed in 23 Pa.C.S.A. § 5313(b)(1)-(3). R.M. v. Baxter, 565 Pa. at 627, 777 A.2d at 451. A review of Maternal Grandmother's petition for standing and complaint for custody reveals that she failed to include any fact or allegation in satisfaction of subsection (b)(3). Moreover, there is no evidence of record that would permit the trial court to resolve subsection (b)(3) in Maternal Grandmother's favor.
The trial court found that subsection (b)(3) was satisfied "when Allegheny County Children, Youth and Families placed minor child in her in care in February of 2010." Trial Court Opinion, 10/26/10, at 11. In arriving at this conclusion, the trial court failed to properly apply subsection (b)(3). Subsection (b)(3) expressly states that the child in question must have "been determined to be a dependent child." 23 Pa.C.S.A. § 5313(b)(3). The wording is clear and unambiguous; thus, it is not enough that the child was merely removed from the care of a parent by CYF.[16]See *514 Grom, 672 A.2d at 825; 1 Pa.C.S.A. § 1921(b).
The record reflects that although CYF removed Child from Mother's care, the trial court expressly found that Child "is NOT DEPENDENT," and placed Child in the care of Father in Florida. Trial Court Order, 3/5/10 (emphasis in the original). Furthermore, there is no allegation or evidence of record that Child is at risk in Father's care. See 23 Pa.C.S.A. § 5313(b)(3). To the contrary, at the dependency hearing, the trial court stated that "there is no evidence that this man is anything other than a fit father[.]"[17] N.T., 3/5/10, at 58. The record is also clear that Child did not reside with Maternal Grandmother for 12 consecutive months leading up to Maternal Grandmother filing a complaint for custody. See 23 Pa.C.S.A. § 5313(b)(3); Complaint for Custody, 4/29/10, at ¶ 3. In other words, Maternal Grandmother's complaint is entirely devoid of any fact or allegation in support of section 5313(b)(3).
In his preliminary objections to Maternal Grandmother's complaint for custody, Father asserted that Maternal Grandmother "cannot satisfy subsection (b)(3)." Preliminary Objections (Maternal Grandmother), 5/17/10, at ¶ 78. Where the contested pleading is legally insufficient to maintain the cause of action, preliminary objections should be granted. Pa.R.C.P. 1028(a)(4); Cooper v. Church of St. Benedict, 954 A.2d 1216, 1218 (Pa.Super.2008). We therefore conclude that the trial court erred by failing to grant Father's preliminary objection, as Maternal Grandmother failed to sufficiently plead that she was entitled to full custody of Child pursuant to 23 Pa.C.S.A. § 5313.

Conclusion
To summarize, the trial court erred by finding that Pennsylvania is Child's home state pursuant to 23 Pa.C.S.A. § 5421, as Child was not living with a parent or person acting as a parent in Pennsylvania for the requisite six months. The trial court further erred by denying Father's preliminary objections regarding the nature of Mother's stay in Pennsylvania without a hearing. We remand the case for a hearing on whether Mother's absence from Florida was intended to be permanent. Should the trial court determine that Mother's absence from Florida was intended to be temporary, the matter shall be transferred to the State of Florida, the Child's home state. On the other hand, if the trial court determines, based on the evidence, that Mother's absence from Florida was intended to be permanent, the trial court shall determine which stateFlorida or Pennsylvaniahas the "maximum significant contacts" with Child to determine in which state jurisdiction properly lies.
If the trial court determines that Pennsylvania has jurisdiction pursuant to 23 Pa.C.S.A. § 5421(a)(2), the trial court shall hold a hearing to determine whether Pennsylvania should nonetheless decline jurisdiction on the basis of Mother's and Maternal Grandmother's alleged "unjustifiable conduct" pursuant to 23 Pa.C.S.A. § 5428. The trial court erred by dismissing *515 Father's preliminary objections on this issue without a hearing.
In the event the trial court determines that Pennsylvania can and should exercise jurisdiction over the custody matter, the trial court must then determine, following an evidentiary hearing, whether Maternal Grandmother has standing to file for partial custody and visitation of Child pursuant to 23 Pa.C.S.A. § 5312. The trial court erred by dismissing Father's preliminary objection on this issue without a hearing.
Finally, although we agree with the trial court that Maternal Grandmother had standing to file for custody of Child pursuant to 23 Pa.C.S.A. § 5313(b), her pleadings were legally insufficient to state a claim for custody of Child. Thus, the trial court erred by dismissing Father's preliminary objection on that basis.
Order vacated and case remanded for proceedings in accordance with this Opinion. Jurisdiction relinquished.
NOTES
[1] "An appeal may be taken as of right from an order in a civil action or proceeding sustaining the venue of the matter or jurisdiction over the person or over real or personal property if: [. . .] the court states in the order that a substantial issue of venue or jurisdiction is presented." Pa.R.A.P. 311(b)(2).
[2] We have reordered the issues to aid in our disposition.
[3] 1 Pa.C.S.A. § 1921(c) states:

When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:
(1) The occasion and necessity for the statute.
(2) The circumstances under which it was enacted.
(3) The mischief to be remedied.
(4) The object to be attained.
(5) The former law, if any, including other statutes upon the same or similar subjects.
(6) The consequences of a particular interpretation.
(7) The contemporaneous legislative history.
(8) Legislative and administrative interpretations of such statute.
[4] The UCCJEA also reenacted several of the provisions contained in the UCCJA, and the explanatory notes associated with each section of the UCCJEA detail the differences and similarities between the two. See, e.g., 23 Pa.C.S.A. § 5421 (Uniform Law Comment).
[5] The PKPA defines "home state" as "the State in which, immediately preceding the time involved, the child lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old, the State in which the child lived from birth with any of such persons. Periods of temporary absence of any of such persons are counted as part of the six-month or other period[.]" 28 U.S.C.A. § 1738A(b)(4).
[6] Although this argument was not raised before the trial court, this issue presents a question of the trial court's subject matter jurisdiction and thus cannot be waived. Simpkins v. Disney, 416 Pa.Super. 243, 610 A.2d 1062, 1065 (1992).
[7] The mother moved to Florida, and the father moved to Ohio.
[8] If we determine that the trial court ruling is correct, we can affirm on any basis supported by the record. R.M.G., Jr. v. F.M.G., 986 A.2d 1234, 1238 (Pa.Super.2009).
[9] Although Dincer was decided prior to the promulgation of the UCCJEA, the changes from the relevant section of the UCCJA (section 5344) do not affect the application of the "maximum significant contacts" test. See 23 Pa.C.S.A. § 5421 (Uniform Law Comment); Dincer, 549 Pa. at 319, 701 A.2d at 215.
[10] We recognize that based upon our resolution of the aforementioned issues, the trial court could determine on remand that Pennsylvania lacks jurisdiction over the custody matter, rendering the remaining issues moot. We nonetheless address the remaining issues raised by Father on appeal because this is a Children's Fast Track appeal, and if the trial court determines that Pennsylvania does have jurisdiction over the custody matter, the remaining issues can also be expeditiously addressed by the trial court. See In re K.T.E.L., 983 A.2d 745, 748 (Pa.Super.2009) (indicating the purpose of the Children's Fast Track designation is to "expedite the disposition" such cases). We emphasize, however, that the remaining issues are only to be addressed by the trial court if it finds that jurisdiction properly lies in Pennsylvania.
[11] In its decision, the trial court recognizes that Father was entitled to an evidentiary hearing on the issue of Mother's and Maternal Grandmother's allegedly unjustifiable conduct but nevertheless failed to hold a hearing prior to disposing of Father's preliminary objections. Trial Court Opinion, 10/26/10, at 15 n. 6. This procedural decision by the trial court is troubling since it guaranteed a remand and a delay in the resolution of this "Children's Fast Track" case.
[12] Section 5312 has since been replaced by section 5325 in the new Custody and Grandparent Visitation Act. This section explicitly grants standing to a grandparent to seek partial custody and visitation of a grandchild if certain conditions are met:

Standing for partial physical custody and supervised physical custody
In addition to situations set forth in section 5324 (relating to standing for any form of physical custody or legal custody), grandparents and great-grandparents may file an action under this chapter for partial physical custody or supervised physical custody in the following situations:
(1) where the parent of the child is deceased, a parent or grandparent of the deceased parent may file an action under this section;
(2) where the parents of the child have been separated for a period of at least six months or have commenced and continued a proceeding to dissolve their marriage; or
(3) when the child has, for a period of at least 12 consecutive months, resided with the grandparent or great-grandparent, excluding brief temporary absences of the child from the home, and is removed from the home by the parents, an action must be filed within six months after the removal of the child from the home.
23 Pa.C.S.A. § 5325.
[13] Section 5313(a) states:

When grandparents may petition.
(a) Partial custody and visitation.If an unmarried child has resided with his grandparents or great-grandparents for a period of 12 months or more and is subsequently removed from the home by his parents, the grandparents or great-grandparents may petition the court for an order granting them reasonable partial custody or visitation rights, or both, to the child. The court shall grant the petition if it finds that visitation rights would be in the best interest of the child and would not interfere with the parent-child relationship.
23 Pa.C.S.A. § 5313(a).
[14] In its written opinion, the trial court found that Maternal Grandmother had standing pursuant to section 5313 because of her satisfaction of subsections (1)-(3). See Trial Court Opinion, 10/26/10, at 11. This is not a correct application of the law that was in place at the time of the trial court's decision. As previously stated, however, if a trial court's ruling is correct, we may affirm on any ground. R.M.G., Jr., 986 A.2d at 1238.
[15] As stated supra, in November of 2010, a newly drafted version of the Custody and Grandparent Visitation Act was adopted in Pennsylvania. See 23 Pa.C.S.A. §§ 5322-5340. This new Act included a revision of section 5313 (now section 5324), which sets limitations on a grandparent's standing to seek full custody of a grandchild:

Standing for any form of physical custody or legal custody
The following individuals may file an action under this chapter for any form of physical custody or legal custody:
(1) A parent of the child.
(2) A person who stands in loco parentis to the child.
(3) A grandparent of the child who is not in loco parentis to the child:
(i) whose relationship with the child began either with the consent of a parent of the child or under a court order;
(ii) who assumes or is willing to assume responsibility for the child; and
(iii) when one of the following conditions is met:
(A) the child has been determined to be a dependent child under 42 Pa.C.S. Ch. 63 (relating to juvenile matters);
(B) the child is substantially at risk due to parental abuse, neglect, drug or alcohol abuse or incapacity; or
(C) the child has, for a period of at least 12 consecutive months, resided with the grandparent, excluding brief temporary absences of the child from the home, and is removed from the home by the parents, in which case the action must be filed within six months after the removal of the child from the home.
23 Pa.C.S.A. § 5324. The Legislature did not indicate that the Act was to be applied retroactively. See 1 Pa.C.S.A. § 1926 ("No statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly."). It is therefore inapplicable to the case at bar.
[16] Removing a child from the home of a parent is not the same as a child being adjudicated dependent. The standard of proof for an adjudication of dependency is much higher than that which is required to take a child into protective custody. In order to find a child dependent under the Juvenile Act, the trial court must find by clear and convincing evidence, in relevant part, that the child is without proper care and control as required by law, and that such care and control is not readily available. In re R.W.J., 826 A.2d 10, 14 (Pa.Super.2003); 42 Pa.C.S.A. § 6302. In order to remove a child from a parent, the trial court is only required to find that it is not in the child's best interest to remain in the home. 42 Pa.C.S.A. § 6324(1).
[17] The record reflects that the same judge presided over both the dependency proceedings and the custody proceedings.