J-A29008-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| RICHARD PRATT | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TATIANA ALEXANDER | : | No. 777 WDA 2024 |

Appeal from the Order Entered May 28, 2024
In the Court of Common Pleas of Allegheny County Family Court at
No(s): FD-17-09200-017

BEFORE: OLSON, J., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY OLSON, J.:                **FILED: February 7, 2025**

Richard Pratt ("Father") appeals from the May 28, 2024 order that granted the petition to modify custody filed by Tatiana Alexander ("Mother," and collectively with Father, "Parents") with respect to their child, M.P. ("Child"), born in June 2015. Specifically, the order struck the provision of the October 26, 2021 custody order specifying that Joseph Timko, Mother's paramour, shall not be present during Mother's custodial periods with Child and prohibiting him from any contact with Child. After careful review, we affirm.

The certified record reveals the following relevant facts and procedural history. Child was born during Parents' three-year-relationship. *See* N.T., 4/30/24, at 109. Since December 2017, Parents shared legal and physical custody of Child pursuant to a custody order entered by Parents' mutual

consent. **See** Consent Order, 12/1/17 (providing for shared legal custody and shared physical custody on a week-on/week-off schedule).

At the crux of this case are allegations that Mr. Timko, Mother's live-in paramour with whom she has been in a romantic relationship since 2017 and shares three children, abused Child.[1] **See** N.T., 4/30/24, at 9-10. Allegheny County Children, Youth, and Families ("CYF") received three reports from August 2019 to February 2020, alleging that Mr. Timko had sexually and/or physically abused Child. **See id.** at 22-24. Father filed protection from abuse ("PFA") petitions against Mother on behalf of Child that were based on the same allegations made in the reports to CYF. **See id.** at 25, 110-113.

Specifically, Father filed a PFA petition against Mother on August 15, 2019, alleging that Child reported digital penetration by Mr. Timko the day prior. **See** PFA Petition, 8/15/19; N.T., 4/30/24, at 110. Father testified that Child's disclosure came after she experienced vaginal pain and bleeding on the night of August 13, 2019, and the morning of August 14, 2019, following her custodial period with Mother. **See** N.T., 4/30/24, at 110-111. He took Child to UPMC Children's Hospital at Pittsburgh on August 14, 2014, where she repeated these disclosures to Dr. Jennifer Clarke, a child abuse pediatrician in the Division of Child Advocacy. **See** N.T., 9/29/21, at 9-10.

---

[1] At the time of the subject custody trial in April 2024, Mother and Mr. Timko had a nearly two-year-old son and nearly one-year-old twins. **See** N.T., 4/30/24, at 10.

- 2 -

Dr. Clarke did not find Child's statements to be "rehearsed or contrived." ***Id.*** at 11-12. Further, a physical examination by Dr. Clarke revealed posterior labial adhesions and a possible urinary tract infection.[2] ***See id.*** at 12-16. While acknowledging that each of these alone are nonspecific for sexual abuse, Dr. Clarke concluded that Child had been sexually abused. ***See id.*** at 13-15, 17.

Based on the foregoing, the trial court entered a temporary PFA order and awarded Father physical custody of Child pending a final PFA hearing. ***See*** Temporary PFA Order, 8/15/19. However, on August 29, 2019, the parties resolved the PFA matter by a consent order which provided for shared legal and physical custody but with Mother's custodial periods to be held at her mother's home. Further, the order prohibited Mr. Timko from having any contact with Child pending a CYF investigation into these allegations. ***See*** Consent Order, 8/29/19; N.T., 4/30/24, at 7, 9, 111-112. Upon investigation, CYF deemed the allegations "unfounded." ***See*** N.T., 4/30/24, at 24, 26, 29-30, 58, 61-63, 89-91. Thus, on October 17, 2019, the court lifted the prohibition against Mr. Timko and permitted Mother to exercise custody in her own home. ***See*** Order, 10/17/19.

Father filed another PFA petition against Mother on February 4, 2020, alleging that Child reported to her therapist that Mr. Timko hit her with a

---

[2] A urine dip screen revealed nitrates as well as blood. ***See*** N.T., 9/29/21, at 15-16.

hammer. *See* PFA Petition, 2/4/20; N.T., 4/30/24, at 24, 112-113. The trial court entered an order granting a second temporary PFA and scheduling a final PFA hearing. *See* Temporary PFA Order, 2/4/20. However, the parties again resolved the PFA matter by an agreed upon order, filed on March 4, 2020, that maintained shared legal and physical custody. Further, the order required Mother to ensure that Child not be left alone with Mr. Timko. *See* Consent Order, 3/4/20; N.T., 4/30/24, at 7, 113. CYF ultimately determined that the allegations were unfounded. *See* N.T., 4/30/24, at 24, 26, 29-30, 58, 61-63, 89-91.

The record additionally reveals that CYF received a third report alleging that Mr. Timko threatened Child with a knife, which it also deemed unfounded. *See* N.T., 4/30/24, at 22-24, 26, 29-30, 58, 61-63, 89-91. Father did not file a PFA petition related to this incident.

With respect to the allegations underlying the CYF reports, the Allegheny County Police conducted a parallel criminal investigation, which Officer Edward Watts testified was "inactive as unfounded" due to a lack of evidence of abuse.[3] *Id.* at 53-58, 60-62.

---

[3] Officer Watts explained that the criminal investigation "runs the full course until it's completed. To the point where we either don't have enough evidence . . . or until we have the evidence to move forward with an arrest." N.T., 4/30/24, at 55-56. He continued, "[W]hen we say unfounded . . . it's not closed as unfounded. It's basically inactive as unfounded until . . . we either find evidence or we reach[ the statute of limitations], then it's closed out. It just becomes inactive on our end." *Id.* at 61-62.

On March 4, 2020, Father filed a petition to modify the August 29, 2019 consent order wherein he requested primary physical and sole legal custody.[4] Petition for Modification, 3/4/20, at ¶ 10. Father focused upon Child's impending enrollment in school and repeated his concerns as to Child's safety in Mother's custody. He asserted, "This modification is in the best interest of the child as the child is approaching school-age and week-on week-off custody is no longer a realistic arrangement. Father is also concerned about the child's safety when residing with Mother and [Mr. Timko]." *Id.* at ¶ 11.

The trial court ultimately held a hearing on September 29, 2021, wherein the only outstanding issue related to Mr. Timko.[5] At this hearing, aside from testifying on his own behalf, Father presented the testimony of Dr. Clarke, whom the court admitted as an expert in both pediatric child abuse and general pediatrics. Mother, then appearing *pro se*, testified and presented the testimony of Mr. Timko and her mother, Yvonne Alexander.

---

[4] Father also filed a petition for contempt, averring that Mother withheld custody of Child in contravention of the court order. The court resolved Father's petition pursuant to a consent order of May 6, 2020, *inter alia*, awarding Father make-up custodial time with Child. **See** Consent Order, 5/6/20.

[5] The notes of testimony of this hearing are incorrectly dated September 29, 2019. Notwithstanding, where referenced in this memorandum, we cite to this testimony by the correct date, September 29, 2021.

Thereafter, the court awarded the parties shared legal and physical custody of Child by order dated October 26, 2021 ("existing custody order"). Specifically, the court provided:

> Mother shall enjoy custody every Sunday at 6:00 p.m. until Monday at 4:30 p.m., every Thursday at 6:00 p.m. until Saturday at 12:00 p.m. and every alternate Saturday at 12:00 p.m. until Sunday at 6:00 p.m. Father shall enjoy custody every Monday at 4:30 p.m. until Thursday at 6:00 p.m. and every alternate Saturday at 12:00 p.m. until Sunday at 6:00 p.m.

Order, 10/26/21, at ¶ 2. The court further prohibited any contact between Mr. Timko and Child and directed Mr. Timko to not be present during Mother's custodial periods with Child. *Id.* Critical to the court's determination was the "credibl[e]" testimony of Dr. Clarke "that the child disclosed sexual abuse perpetrated upon her by [Mr. Timko] in 2019 and that the disclosure did not appear rehearsed to Dr. Clarke." Memorandum, 10/26/21, at 2-3.

On April 4, 2022, Mother filed a petition to modify the existing custody order, seeking to "remove any and all restrictions in place keeping Mr. Timko from being with Child." Petition for Modification, 4/6/22, at ¶ 12. Mother emphasized that both CYF and the Allegheny County Police Department determined that Child's allegations were unfounded. Further, she alleged that Child has since admitted that her allegations were lies, and she desires to see Mr. Timko. *See id.* at ¶¶ 5-11. Mother averred,

> This modification is in the best interest of the child as Mr. Timko does not pose any safety threat to Child and it is the child's wishes to be around Mr. Timko again. The allegations of physical and sexual abuse were unfounded and illegitimate and have caused

more hurt than help for Mother, and her ability to provide a stable family atmosphere when Child is living with her.

*Id.* at ¶ 13.[6]

Following mediation, conciliation, and several continuances, the trial court conducted a custody trial on April 30, 2024. Parents agreed upon all issues of custody except for Child's contact with Mr. Timko. They were each present and represented by counsel at this proceeding. Each testified on their

---

[6] Mr. Timko testified that, as a result of this order, Mother exercised her custodial time at her mother's home. Upon inquiry of the court, he stated:

> THE COURT: I have a question. When it's [Mother's] custody time with [Child] where do, you go?
>
> [MR. TIMKO]: She goes to her mother's house --
>
> THE COURT: Okay.
>
> [MR. TIMKO]: -- and I stay at home.
>
> THE COURT: And you stay at home with the kids that you have with --
>
> [MR. TIMKO]: Yes. Yes. If I'm working she has them and then if I'm off, I'll take them. But her being stuck with all the kids at her mom's is horrible. So, I try to, you know, as soon as I get home from work she brings them over and we just somehow make it work.
>
> THE COURT: Okay. So that when the custody time that she has with [Child] is not at your --
>
> [MR. TIMKO]: No. No.
>
> THE COURT: -- marital residence.
>
> [MR. TIMKO]: No. It's not at my house, certainly.

N.T., 4/30/24, at 97-98.

own behalf. Additionally, Mother presented the testimony of Melissa Moore, a supervisor at the Pittsburgh Action Against Rape Agency's ("PAAR") Child and Family Counseling Center, where Child had received therapy;[7] Officer Watts; Lori Rogers, a school social worker; Kellie Kerston, Child's third-grade teacher; Savannah Thompson, a school social worker; Mr. Timko; and Karrah Timko, Mr. Timko's sister.[8] The parties further stipulated to the admission of the notes of testimony of the previous trial resulting in the existing custody order. *See* N.T., 4/30/24, at 152.

At the time of the custody trial, Child had not seen Mr. Timko for almost three years. *See id.* at 37, 93-94. She did however see her half-siblings. *See id.* at 38. Mother testified not only to the "impossib[ility]" of abuse by Mr. Timko, as Child was never left alone with him, but that Child indicated that she lied regarding the allegations against Mr. Timko. *See id.* at 11-12, 18,

---

[7] At the time of the subject proceeding, Child had been discharged from treatment after seven sessions and Child's therapist, Ashley Hall, was no longer employed by PAAR. *See* N.T., 4/30/24, at 46-47.

[8] While the exhibits from this proceeding were not included with the certified record, given the nature of the instant appeal and the testimony presented, this omission does not hamper our review. We, however, pointedly remind counsel that appellants bear "the responsibility to make sure that the record forwarded to an appellate court contains those documents necessary to allow a complete and judicious assessment of the issues raised on appeal." *Commonwealth v. Wint*, 730 A.2d 965, 967 (Pa. Super. 1999) (citations and internal quotation marks omitted); *see also* Pa.R.A.P. 1921 Note ("Ultimate responsibility for a complete record rests with the party raising an issue that requires appellate court access to record materials.") (citation omitted).

34-35, 37. Mother further stated that Child expressed missing Mr. Timko. *See id.* at 18, 35-36. Father acknowledged that Child admitted to lying and communicated missing Mr. Timko on at least one occasion. *See id.* at 118, 136-137. While Child had previously evidenced some behavioral issues, including in school, her teacher expressed that she was currently doing well and had seemed to settle into her custodial/family routine. *See id.* at 78-79.

By order dated May 17, 2024, and entered May 28, 2024, the trial court granted Mother's petition to modify the existing custody order. Specifically, the court struck the provision of the existing custody order prohibiting Mr. Timko's presence during Mother's custodial periods with Child and forbidding him to have contact with Child. All other provisions of the existing custody order remained in effect. Relying on the testimony of Officer Watts and the unfounded nature of the CYF reports, the court explained, "Based upon that evidence, the court has determined that Mr. Timko did not pose an immediate threat of immediate harm to the minor child at those times, nor would he be likely to pose any threat of immediate harm to the minor child at any time in the future." Trial Court Opinion, 7/22/24, at 3.

On June 17, 2024, Father filed a timely notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P.

1925(a)(2)(i) and (b). Thereafter, on July 22 2024, the trial court filed a

responsive Rule 1925(a) opinion.[9]

On appeal, Father raises the following issues for our review:

I. Did the trial court err in finding that it was in the Child's best interest to allow [Mother]'s paramour to be allowed around the [C]hild again by relying on hearsay evidence of [Allegheny County Children, Youth, and Families]?

II. Did the trial court err in making a ruling on an issue of fact that was previously decided on in a prior evidentiary hearing and was precluded by the doctrine of collateral estoppel?

Father's Brief at 5.

Our standard and scope of review in this context is well-established:

Our standard of review over a custody order is for a gross abuse of discretion. Such an abuse of discretion will only be found if the trial court, in reaching its conclusion, overrides or misapplies the law, or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias, or ill-will as shown by the evidence of record.

In reviewing a custody order, we must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the trial court who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

---

[9] By order of October 17, 2024, this Court granted counsel for Mother's petition to withdraw. Mother therefore submitted an appellee brief to this Court *pro se*.

*Rogowski v. Kirven*, 291 A.3d 50, 60-61 (Pa. Super. 2023) (cleaned up). As we stated in *King v. King*: "It is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, 'based on the evidence presented, [giving] due deference to the trial court's weight and credibility determinations,' the trial court erred or abused its discretion." *King v. King*, 889 A.2d 630, 632 (Pa. Super. 2005) (quotation marks and citations omitted).

As with all custody-related matters, the Pennsylvania courts' "paramount concern is the best interest of the child involved." *Rogowski*, 291 A.3d at 61 (cleaned up). To that end, our law provides that a court is only empowered to change an existing custody order if the modification will "serve the best interest of the child." 23 Pa.C.S.A. § 5338(a). Specifically, Section 5328(a) sets forth a number of factors that a court must consider prior to modifying an existing custody order. *See E.B. v. D.B.*, 209 A.3d 451, 460 (Pa. Super. 2019); 23 Pa.C.S.A. § 5328 ("In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors," including the sixteen enumerated factors, "giving weighted consideration to those factors which affect the safety of the child.").[10]

_____

[10] At the time of these custody proceedings, the list of factors set forth at Section 5328(a) included only the elements set forth above. We note, however, that our General Assembly contemporaneously enacted significant amendments to, *inter alia*, the custody factors "pursuant to Act of April 15, *(Footnote Continued Next Page)*

However, we have clarified that the factors set forth by Section 5328(a) are not required to be addressed where an order merely deals with a discrete and distinct issue. In **S.W.D. v. S.A.R.**, 96 A.3d 396 (Pa. Super. 2014), we stated:

> It is also true that resolution of an otherwise ancillary matter may affect a form of custody and require consideration of the § 5328(a) factors. For instance, the choice of a child's school may factor into a trial court's decision to award a form of custody when the trial court is addressing a request to establish or change legal or physical custody in connection with the choice of school. One parent in a custody dispute may argue that he or she is entitled to primary physical custody because his or her residence has much better schools. On the other hand, many times- like here- these items may appear as independent, discrete issues advanced by motion or petition that does not require a change in the form of custody. **Although any decision requires consideration of**

_____

2024, P.L. 24, No. 8 (known as 'Kayden's Law')." **Velasquez v. Miranda**, 321 A.3d 876, 886 n.6 (Pa. 2024). Specifically, Kayden's Law expands the factors to be considered in the custody court's best interest analysis by requiring the court to give "substantial weighted consideration" to, *inter alia*, the "safety of the child," which is defined as "the physical, emotional and psychological well-being of the child," and any "violent or assaultive behavior committed by a party." **Id.** In addition to new elements, our review of these amendments also reveals that the language of many of the factors have been substantively revised. **See** 23 Pa.C.S.A. § 5328(a)(1)-(2), (2.2)-(2.3), (4), (8).

These statutory amendments took legal effect on August 13, 2024, *i.e.*, several months after the trial court issued the instant custody determination. It is a well-settled principle of statutory interpretation that "[n]o statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly." 1 Pa.C.S.A. § 1926. There is no retroactivity clause included in the text of Kayden's Law. **See generally** PA LEGIS 2024-8, 2024 Pa. Legis. Serv. Act 2024-8 (S.B. 55). Thus, we do not apply Kayden's Law in this case. **See**, **e.g.**, **R.M. v. J.S.**, 20 A.3d 496, 513 n.15 (Pa. Super. 2011) (declining to apply revised version of statute in custody proceedings that concluded several months prior to the revisions taking legal effect).

**the child's best interest, only the former situation requires consideration and application of the [Section] 5328(a) factors.**

*Id.* at 403 (emphasis added); *see also M.O. v. J.T.R.*, 85 A.3d 1058, 1062-63 (Pa. Super. 2014) (stating, "Because the trial court did not make an award of custody, but merely modified a discrete custody-related issue, it was not bound to address the sixteen statutory factors in determining the Children's best interest.").

Instantly, the trial court provided the following rationale for the subject order:

> Detective Watts credibly testified that he thoroughly investigated all three allegations, including his observations of the forensic interviews of the minor child, along with interviews of the parties herein. Detective Watts further testified that based upon all evidence gathered on all three allegations, there was no evidence of any abuse to the minor child. As such, all allegations were [deemed to be] unfounded by the Allegheny County [P]olice.
>
> The second source upon which the court relied was [CYF], which conducted collateral investigations into the three allegations of abuse leveled against Mr. Timko. Similar to the determinations made by the Allegheny County Police, [CYF] determined that the three allegations were unfounded as well.
>
> Based upon that evidence, the court has determined that Mr. Timko did not pose an immediate threat of immediate harm to the minor child at those times, nor would he be likely to pose any threat of immediate harm to the minor child at any time in the future.
>
> For that reason, the court entered the May 17, 2024, that modified the October 26, 2021 order by striking Paragraph 2 that had precluded Mr. Timko from being present during Mother's custodial periods with the minor child. All other terms and conditions of the October 25, 2021 order are to remain in full force and effect.

Trial Court Opinion, 7/22/24, at 2-3 (cleaned up).

With his first issue on appeal, Father assails the trial court's order modifying the existing custody order based upon the trial court's alleged reliance on written documentation that was not made a part of the record inasmuch as it was inadmissible hearsay evidence. **See** Father's Brief at 15-16. Specifically, Father argues that the trial court erred in relying upon documentation from CYF indicating that, upon investigation, it deemed as unfounded the allegations against Mr. Timko set forth in the three reports described above. **See id.** at 16. Hearsay is an out-of-court statement offered for the truth of the matter asserted. Pa.R.E. 801(c). Unless the statement is not being offered for its truth or it falls within a hearsay exception, it is inadmissible. Pa.R.E. 802.

The relevant exchange occurred during the direct examination of Mr. Timko as follows.

BY [COUNSEL FOR MOTHER]

Q. I'm going to show you what I've marked as Exhibit 3A. There's three pages there. And they all say the same thing, the only thing that changes is the date.

A. Uh-huh.

Q. Is that the letter that you received from CYF? Well, there's three of them. Would you just confirm each one of them?

A. Yes. Yes.

Q. Okay. Was that your address at the time?

A. Yes.

Q. Okay. And what is that -- you don't have to read it, but what does that say?

A. It says it was unfounded. There was nothing found; no proof, anything; anything like that. Nothing that would, you know, it's -- not proven -- you know what I mean. It was all unfounded. There was nothing found.

Q. Okay.

[COUNSEL FOR MOTHER]: Your Honor, I would move for Exhibit 3 to be admitted.

[COUNSEL FOR FATHER]: Objection. Those were not authored by Mr. Timko. They were authored by CYF and nobody is here to authenticate the record. Therefore, they're hearsay.

BY [COUNSEL FOR MOTHER]:

Q. Is this a fair and accurate representation of the letter -- these are the exact letters, just photocopied that you received; is this your address?

[COUNSEL FOR FATHER]: He still did not -- he was not the one who wrote them himself.

THE COURT: Well, that's true. So, to admit them substantively, now, he can talk about what he did upon receiving them that influenced his actions in any way.

[COUNSEL FOR MOTHER]: Let's leave the letters out of this. I'll withdraw my request. Let's leave the admission of the letters out of it substantively, right.

N.T., 4/30/24, at 91.[11]

_____

[11] We observe that Mother additionally questioned Officer Watts regarding this CYF documentation during his testimony.  In response to Father's objection on the basis of hearsay, the court instructed Mother to rephrase her question. Notably, Mother did not attempt to admit the CYF documentation at that time. *See* N.T., 4/30/24, at 60-61.

- 15 -

Preliminarily, we conclude that Father waived this issue for failure to raise it in his Rule 1925(b) concise statement. *See In re M.Z.T.M.W.*, 163 A.3d 462, 466 (Pa. Super. 2017) ("[I]t is well-settled that issues not included in in an appellant's statement of questions involved and concise statement of errors complained of on appeal are waived.") (citing *Krebs v. United Refining Co. of Pa.*, 893 A.2d 776, 797 (Pa. Super. 2006)).

Notwithstanding, even if not waived, Father's claim is without merit. Contrary to Father's argument, there is no indication that the trial court considered the CYF documentation. Rather, the court relied upon the undisputed testimony of Mother, Mr. Timko, and Officer Watts that CYF deemed the three aforementioned reports against Mr. Timko as unfounded. *See id.* at 24, 26, 29-30, 58, 61-63, 89-91. As such, Father's claim fails.

Alternatively, Father maintains that the evidence does not support that modification was in Child's best interests. *See* Father's Brief at 17-19. In support thereof, Father highlights that Child was doing well in the absence of contact with Mr. Timko. *See id.* at 17-18. Father also contends that Mother disregards the testimony of Dr. Clarke and, instead of concern for Child, focuses on Mother and her family with Mr. Timko. *See id.* at 18. As such, Father concludes,

> While not one single custody factor is determinant, the court should give weighted consideration to the custody factors affecting the safety of the child, including present or past abuse committed by a party or household member. Accordingly, the court below should have concluded that there was no evidence presented by [Mother] to show that allowing Mr. Timko around the

- 16 -

minor child during [Mother]'s custodial time would serve the best interest of the minor as required by the statute.

*Id.* at 19. We must disagree.

Officer Watts testified that the criminal investigation was deemed "inactive as unfounded" since the evidence "did not support any abuse." N.T., 4/30/24, at 56-57, 60-62. Further, Ms. Moore revealed that Child was discharged from therapy at PAAR as Child "has not disclosed abuse and is adamant that she made up the lie." *Id.* at 46. Mother likewise testified that Child told her she lied regarding the allegations against Mr. Timko. *See id.* at 18, 34-36. She additionally testified that Child in fact misses Mr. Timko, which was confirmed by school social worker, Ms. Rogers. *See id.* at 18, 34-36, 67, 69.

As the record supports the trial court's determination, we discern no abuse of discretion. We reiterate that, although required to consider a child's best interest, the factors set forth by Section 5328(a) are not required to be addressed where an order merely deals with a discrete and distinct issue. *S.W.D.*, 96 A.3d at 403 ("Although any decision requires consideration of the child's best interest, only the former situation requires consideration and application of the [Section] 5328(a) factors.").

Next, turning to Father's second claim of collateral estoppel, we are again constrained to conclude that Father has waived this issue. This Court has stated that collateral estoppel, also referred to as "issue preclusion," "operates to prevent a question of law or issue of fact which has once been

litigated and fully determined in a court of competent jurisdiction from being re[-]litigated in a subsequent suit." ***E.K. v. J.R.A.***, 237 A.3d 509, 521 (Pa. Super. 2020) (internal quotation marks and citation omitted) (brackets in original). We further explained that collateral estoppel applies

> if (1) the issue decided in the prior case is identical to one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding and (5) the determination in the prior proceeding was essential to the judgment.

***Id.*** (citation omitted).

As the record is devoid of any action by Father to raise the issue of collateral estoppel since the filing of Mother's petition to modify in April 2022, over two years prior to the subject proceeding, such a claim would be waived for failure to raise it before the trial court. ***See, e.g., Hopewell Estates, Inc. v. Kent***, 646 A.2d 1192, 1194 (Pa. Super. 1994) (noting that collateral estoppel is an "affirmative defense" that is waived if not raised in a timely fashion). Father likewise waived this issue by not raising it in his Rule 1925(b) concise statement. ***See M.Z.T.M.W.***, 163 A.3d at 465-466. Given Father's failure to preserve this claim, we do not address it.

Accordingly, for the foregoing reasons, we affirm the trial court's order of May 28, 2024.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

2/7/2025