J-A03013-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ANDREW HESS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JANET ZAPATA | : | No. 2470 EDA 2024 |

Appeal from the Order Entered August 15, 2024
In the Court of Common Pleas of Northampton County
Civil Division at No:  C-48-CV-2020-02599

BEFORE:  STABILE, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY STABILE, J.:                    **FILED APRIL 10, 2025**

Appellant, Andrew Hess ("Father"), appeals from the August 15, 2024, custody order that awarded Janet Zapata ("Mother") (collectively with Father, "Parents") primary physical custody, and him partial physical custody, of Parents' biological five-year-old son, C.J.H. ("Child").  Upon careful review, we affirm.

We gather the relevant factual and procedural history of this matter from the certified record.  Parents never married but were in a relationship at the time of Child's birth in January 2019.  Over the course of the next year, their relationship deteriorated and ultimately ended.  On April 13, 2020, Father initiated a custody action in the Northampton County Court of Common Pleas wherein he requested sole legal and primary physical custody of Child.  On May 4, 2020, Mother filed an answer, a cross complaint, and a notice of

proposed relocation. Father filed a counter-affidavit on May 8, 2020, objecting to Mother's proposed relocation.

The court held a custody trial on July 16, 2020. By order dated July 28, 2020, the court denied Mother's request for relocation and awarded Parents shared legal and physical custody on an alternating weekly basis.

In October 2021, when Child was two years old, at the behest of the parties, the court entered a modified custody order wherein Father consented to Mother's relocation to Allegheny County.[1] Despite Mother's relocation approximately 300 miles away, the order maintained the same custody arrangement.

Thereafter, on March 13, 2024, in anticipation of Child starting kindergarten in the fall, Mother filed a petition for modification seeking primary physical custody of Child. On March 22, 2024, Father filed an answer and counterclaim requesting that the court award him primary physical custody.

On August 6 and 7, 2024, the court held a hearing on Parents' competing requests. Mother testified that she resides in a single-family home in Allegheny County with her husband, T.B. ("Stepfather"), and their biological child, C.B., who was three years old at the time of the custody hearing. *See* N.T., 8/6/24, at 21, 80. Stepfather also has three biological children, five and

_____

[1] Father testified that he consented to Mother's relocation because he believed it would be in Child's best interest. *See* N.T., 8/6/24, at 206-207. Specifically, he stated that the modified order would benefit Child because Mother was already transporting Child to Pittsburgh during her custodial time. *See id.*

eleven-year-old sons and an eight-year-old daughter. Stepfather's children reside with the family every other week.[2] *See id.* at 21-23, 116. Mother testified about the close relationship Child has with his stepsiblings. *See id.* at 33-37. She emphasized that Child is the same age as Stepfather's youngest child. She stated that they will be in the same grade and would attend the same school in their district. Mother testified that Child and his stepsibling of the same age have similar interests, and they play on the same organized sports teams. *See id.* at 33. She further testified that Child's stepsister is very nurturing to him and that Stepfather's eldest son is an "excellent role model" for Child. *See id.* at 34-36.

Mother works at Carnegie Mellon University as a business office manager. *See id.* at 5. Stepfather is employed as a sales executive at Amazon Business. *See id.* at 80-81.

Father resides in Northampton County in a single-family home with his wife, H.H. ("Stepmother"), whom he married in August 2022, and their biological daughter, who was nineteen months old at the time of the custody trial. *See id.* at 153. In May 2024, Father was fired from his employment in sales.[3] *See* N.T., 8/7/24, at 23-26. However, he speculated that he would

---

[2] The weeks that Child resided with Mother aligned with the weeks Stepfather's children were at the home. *See* N.T., 8/6/24, at 116.

[3] Father testified that he submitted business sales incorrectly to falsely increase his sales numbers. *See* N.T., 8/7/24, at 24.

be starting a new sales job in September 2024, if the other opportunities he was pursuing did not come to fruition, due to knowing the hiring manager. *See id.* at 29-31; *see also* N.T., 8/6/24, at 165. Father also testified that Stepmother is attending law school, and she will graduate in the spring of 2025. The family has been relying on savings to pay their bills and could continue to utilize savings for approximately two more months from the date of the hearing. *See* N.T., 8/6/24, at 165-166; *see also* N.T., 8/7/24, at 27.

Father testified that he is able to provide Child with more individual attention and support than Mother. *See* N.T., 8/6/24, at 154. He further testified that Child's medical and dental providers have remained the same throughout his life and are located in Northampton County. *See id.* at 161-164

On August 15, 2024, the trial court entered an order that, *inter alia*, awarded Mother primary physical custody subject to Father's partial physical custody during the summer, spring break, and every third weekend during the school year.[4]

On September 12, 2024, Father timely filed a notice of appeal along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). In response, on September 24, 2024, the

---

[4] The court also implemented a holiday schedule regarding Christmas, Easter, and Thanksgiving, which provided the parties with equal custody during those times. Father does not contest the holiday schedule.

trial court submitted a Rule 1925(a)(2)(ii) statement, which relied primarily on the analysis set forth in the court's opinion accompanying the August 15, 2024 order.

On appeal, Father asserts the following issues for our review:

1. Whether the trial court abused its discretion by awarding primary physical custody to Mother?

2. Whether the trial court abused its discretion by finding that 23 Pa.C.S.A. § 5328(a)(1), (3), and (5), weighed evenly between the parties?

3. Whether the trial court abused its discretion by finding that 23 Pa.C.S.A. § 5328(a)(4) favored Mother?

4. Whether the court abused its discretion by failing to make findings of credibility against Mother where she made materially false statements in her testimony?

5. Whether the trial court committed an error of law by applying a presumption in favor of Mother in violation of 23 Pa.C.S.A. § 5328(b)?

Father's Brief at 4-5 (cleaned up).

Our standard and scope of review in this context is well-established:

Our standard of review over a custody order is for a gross abuse of discretion. Such an abuse of discretion will only be found if the trial court, in reaching its conclusion, overrides or misapplies the law, or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias, or ill-will as shown by the evidence of record.

In reviewing a custody order, we must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the trial court who viewed and

assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*Rogowski v. Kirven*, 291 A.3d 50, 60-61 (Pa. Super. 2023) (cleaned up) (citations omitted). "It is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, 'based on the evidence presented, given [*sic*] due deference to the trial court's weight and credibility determinations,' the trial court erred or abused its discretion[.]" *King v. King*, 889 A.2d 630, 632 (Pa. Super. 2005) (quoting *Hanson v. Hanson*, 878 A.2d 127, 129 (Pa. Super. 2005)).

As with all custody-related matters, the Pennsylvania courts' "paramount concern is the best interest of the child involved." *Rogowski*, 291 A.3d at 61 (internal citation and quotation omitted). To that end, our law provides that a court is only empowered to change an existing custody order if the modification will "serve the best interest of the child." 23 Pa.C.S.A. § 5328(a). Specifically, the Act sets forth a number of factors at Section 5338(a) that a court must consider prior to modifying an existing custody order. *See E.B. v. D.B.*, 209 A.3d 451, 460 (Pa. Super. 2019). These factors provide as follows:

> **(a) Factors.**--In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).[5]

In order to evidence its consideration of these required elements, custody courts must set forth a discussion of these best-interest factors "prior to the deadline by which a litigant must file a notice of appeal." *A.V. v. S.T.*, 87 A.3d 818, 820 (Pa. Super. 2014). This Court has emphasized that the trial

_____

[5] Our General Assembly amended Section 5328(a) by "Act of April 15, 2024, P.L. 24, No. 8 (known as 'Kayden's Law')." *Velasquez v. Miranda*, 321 A.3d 876, 886 n.6 (Pa. 2024). These statutory amendments took legal effect on August 13, 2024, *i.e.*, approximately one week after the custody trial concluded in the instant case.

It is a well-settled principle of statutory interpretation that "[n]o statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly." 1 Pa.C.S.A. § 1926. There is no retroactivity clause included in the text of Kayden's Law. *See generally* PA LEGIS 2024-8, 2024 Pa. Legis. Serv. Act 2024-8 (S.B. 55). Thus, we will not apply Kayden's Law to the instant appeal. *See*, *e.g.*, *R.M. v. J.S.*, 20 A.3d 496, 513 n.15 (Pa. Super. 2011) (declining to apply revised version of statute in custody proceedings that concluded prior to the revisions taking legal effect).

court, as the finder of fact, determines "which factors are most salient and critical in each particular case." ***M.J.M. v. M.L.G.***, 63 A.3d 331, 339 (Pa. Super. 2013) (citing ***A.D. v. M.A.B.,*** 989 A.2d 32, 35-36 (Pa. Super. 2010)). In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." ***M.J.M.*** 63 A.3d at 336.

Instantly, the court filed an opinion accompanying its August 15, 2024, order which provided a thorough discussion of the Section 5328(a) custody factors. In its opinion, the trial court determined that Section 5328(a)(1), (2), (3), (5), and (7)-(16) were either equal or not applicable.[6] ***See*** Trial Court Opinion, 8/15/24, at 3-8.

The court found that Section 5328(a)(4) and (6) favored Mother and were determinative. ***See id.*** at 4-5. The court emphasized Child's strong relationships with his stepsiblings, especially his stepbrother of the same age who "will be in the same grade and school." ***See id.*** at 5.

---

[6] The trial court did not make any specific findings with respect to Section 5328(a)(2.1). We remind the trial court that it is required to consider "**[a]ll** of the factors listed in section 5328(a) . . . when entering a custody order." ***J.R.M. v. J.E.A.,*** 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original). As no party has objected, and there are no indications that this factor is at all relevant to the instant case, the court's omission of Section 5328(a)(2.1) is not fatal to the custody order.

In awarding Mother primary physical custody during the school year, the court concluded the following:

> This is an extremely difficult case. Both parties are caring and loving parents with spouses who are good step-parents. Each party has provided a good home life for Child. The determination is also difficult because the parties have stipulated to residing in areas that are approximately 300 miles apart. Now that [C]hild is ready to begin school, a determination must be made for primary physical custody.
>
> Given this situation, we believe that Mother has the edge in being the primary physical custodian, especially when considering the stability and continuity in Child's family life and community life in our factor four analysis, as well as Child's siblings and stepsibling relationships addressed in factor six.

*Id.* at 7-8. As we discuss further *infra*, the trial court's findings are supported by the record.

We address Father's first three claims as to Section 5328(a)(1), (3), (4), and (5) together inasmuch as he jointly presents them in his brief.[7] *See* Father's Brief at 18-32. Father equates the trial court's "flawed analysis" to *D.K.D. v. A.L.C.*, 141 A.3d 566 (Pa. Super. 2016), where this Court reversed a trial court's decision to grant a mother's relocation request where the record did not support the court's findings. *See id.* We disagree.

To the extent Father relies on *D.K.D.*, we find his comparison unavailing. In contrast to this case, *D.K.D.* involved a relocation request by a mother with

---

[7] Father structures his draft into three main argument sections wherein he combines his first three issues into one section. We remind counsel that Rule 2119(a) requires, *inter alia,* that "[t]he argument shall be divided into as many parts as there are questions argued." Pa.R.A.P. 2119(a)

a special needs child to Florida, thus, requiring analysis of the ten relocation factors provided by 23 Pa.C.S.A. § 5337(h). *See id.* at 569. Since neither party was seeking to relocate in connection with their respective custody requests, the relocation provisions at Section 5337 were not triggered in the instant case. *See D.K. v. S.P.K.*, 102 A.3d 467, 474 (Pa. Super. 2014) ("While it is clear that every request for relocation pursuant to the statute implicates the custody of the child, the relocation provisions are not triggered unless one of the parties is relocating.").

Regarding Section 5328(a)(1), which party is more likely to encourage and permit frequent and continuing contact between the child and another party, Father argues that his consent to Mother's relocation with Child in October 2021, makes it clear that the court should have found this factor in his favor. *See* Father's Brief at 19-20. Father also emphasizes two instances where Mother denied his requests to exchange Child a few hours after the agreed upon time of 5 p.m. *See id.* at 20-21. Ultimately, Father contends the trial court ignored his testimony. *See id.* at 22.

In finding Section 5328(a)(1) weighed evenly between the parties, the trial court stated the following:

> This factor is weighed relatively evenly between the parties due to their communication and cooperation with each. Mother has encouraged [C]hild to discuss school activities with Father, and she has also involved Father in parent-teacher conferences. Father is equally as encouraging per Mother's stipulation, and is flexible with schedule changes between the parties. Father specifically agreed to Mother's relocation to the Pittsburgh area, even after receiving an order denying it. We find both parties'

- 11 -

encouragement toward continuing contact with the other to be relatively equal.

Trial Court Opinion, 8/15/24, at 3-4. We discern no abuse of discretion or error by the court in rendering these findings.

Father testified regarding two occasions where Mother did not acquiesce to a request he made to exchange Child later than the agreed-upon time of 5 p.m. *See id.* at 155-160. On cross examination, Father admitted that Mother was reasonable in denying his requests. *See* N.T., 8/7/24, at 6. He further admitted that, despite these specific occurrences, "there have been times, I would imagine, that [Mother has] agreed to make changes." N.T., 8/6/24, at 160; *see also* N.T., 8/7/24, at 10-11.

Mother testified that she believes both parties encourage Child's relationship with the other parent. *See* N.T., 8/6/24, at 55-60. She admitted that it can be difficult to accommodate schedule changes due to the distance between them, but she does her best to be flexible. *See id.* at 57-58. Mother also stated that she contacts Father regarding Child's daily activities when he is in her physical custody. *See id.* at 58. Mother understands how important Father is to Child and stated that she would continue to encourage their relationship. *See id.* at 57. Based upon the foregoing, we observe no abuse of discretion or error of law in the trial court's findings pursuant to Section 5328(a)(1).

Turning to Father's argument regarding Section 5328(a)(3), the parental duties performed by each party on behalf of the child, Father

emphasizes that Child's primary care physician and dentist, since his birth, are located in Northampton County. *See* Father's Brief at 22-24. He contends that the record does not reflect that Mother has sought pediatric and dentistry services in Allegheny County. *See id.* at 24.

In weighing Section 5328(a)(3) equally between the parties, the court explained:

> This factor is weighted relatively evenly in favor of both Mother and Father. Mother is involved in the medical needs of [C]hild and has proven to provide pediatric and dentistry services in the Pittsburgh area. Father also has adequate medical and dental providers in the local Nazareth area. Both parties have provided good pre-schools in the Pittsburgh and Nazareth areas. Mother enrolled [C]hild in [a] pre-school, which provides instruction in both language development and social skills. Father specifically purchased a home in the Nazareth area due in part to the good reputation of the school district. Father and Mother are both dedicated to their child's personal development and education. For the reasons stated above, we find both parties have performed relatively equal parental duties on behalf of [Child].

Trial Court Opinion, 8/15/24, at 4. These findings are supported by the certified record.

Primarily, although Child continued to have his medical and dentistry needs met in Northampton County, Mother testified that Child would be seen by the same pediatrician that cares for Child's stepsiblings and half-brother, and the same dentist as Mother. *See* N.T., 8/6/24, at 78-79. Further, she has researched and identified a cardiologist for Child.[8] *See* N.T., 8/6/24, at

_____

[8] Child is seen once a year by a cardiologist due to a pulmonary valve stenosis which Mother described as a "low-risk heart condition." N.T., 8/6/24, at 122.

77-79. Mother also testified that she has attended all of Child's medical appointments via FaceTime. *See id.* at 69, 121. Further, Father does not challenge the court's finding that both parents are dedicated to Child and perform parental duties while Child is in their care. Indeed, in discussing Section 5328(a)(3) with the court on August 6, 2024, Father's counsel conceded that there is no dispute that each parent performs parental duties. *See id.* at 65-67. Accordingly, we find no error of law or abuse of discretion in the trial court's findings with respect to Section 2511(a)(3).

With respect to Section 5328(a)(4), the need for stability and continuity in the child's education, family life and community life, Father contends that the trial court erred in focusing on his unemployment at the expense of more direct evidence presented during the trial related to stability and continuity. *See* Father's Brief at 27-32. Father posits that the totality of the other evidence related to Section 5328(a)(4) "render the parties equal." *Id.* at 29. He further argues that although he and his wife were not working, they were financially stable. *See id.* at 31. Overall, Father contends the court should have equally weighted Section 5328(a)(4) between Parents.

In finding that Section 5328(a)(4) favored Mother, the court reasoned as follows:

> This factor is weighed in favor of Mother. Mother works full-time with stable income and she and her current husband own their home. Her husband works full-time and adequately provides financially to their family unit. Mother provides activities and a lifestyle for [C]hild, including soccer, baseball, and a good family

home life. [C]hild has positive contact with his half[-] sibling and step-siblings in Mother's home.

On the other hand, Father is currently unemployed with a hopeful expectation that he will be starting a new job in September [2024]. His current wife is attending law school full-time. Father testified that their family will be relying on savings until he begins working again. He and his wife also own their home, and his savings will be needed to pay their mortgage and other home related expenses. This couple has a 19-month-old child of their own, and Child enjoys his relationship with his half-sibling. Father also provides sports and church activities for [C]hild.

Trial Court Opinion, 8/15/24, at 4-5.

Father speculated that he would be starting a new job in September 2024. *See* N.T., 8/7/24, at 29. However, at the time of the hearing, he had not actually begun the formal hiring process or been offered a position. *See id.* at 29-31. He relies merely on his informal contact with a hiring manager. *See id.* at 29. Further, as related *supra*, Child has strong relationships with his stepsiblings, particularly the youngest who is the same age and will be in the same class.

In its opinion, the trial court acknowledged that "this is an extremely difficult case" because both parties love and care for Child. *See* Trial Court Opinion, 8/15/24, at 7. Accordingly, the court had to focus on subtle differences between Parents. While Father would have preferred the court focus on Child's medical and dental providers that were located in Northampton County, the court found determinative Child's relationships with his stepsiblings and Mother's stable financial situation. Notably, Father does not contest the court's finding that Section 5328(a)(6) favors Mother. Based

on the foregoing, the trial court's findings are supported by the record, and it was not unreasonable for the trial court to determine that Section 5328(a)(4) favored Mother.

The court determined the following with regard to Section 532(a)(5), the availability of extended family:

> Based on the testimony, this factor is relatively equal between the parties. Mother's parents have retired and are living abroad in Colombia, South America; however, they visit with [C]hild whenever they return to their home in Florida. Father's parents are located locally in Bangor, and Child is able to see them regularly when in Father's custody. The parties also testified about several other relatives in their respective areas.

Trial Court Opinion, 8/15/24, at 5.

Father asserts that the trial court's findings are not supported by the record. *See* Father's Brief at 25-27. Specifically, Father takes issue with the court's finding that maternal grandparents reside in Florida. Father further contends that Mother did not testify about "several other relatives" that reside in Allegheny County. *See id.* at 27.

Father's argument that Mother did not testify about other relatives in Allegheny County is disingenuous. Mother testified that Stepfather has various family members that are located in Allegheny County, including his mother that Child sees two to three times a week when he resides with Mother. *See* N.T., 8/6/24, at 86. In his argument, Father attempts to distinguish Mother's extended family from that of Stepfather, but it is clear that the trial court did not make this distinction. *See* Father's Brief at 25 ("[A]part from

- 16 -

[Stepfather] and *his* extended family, Mother has no extended family in Allegheny County." (emphasis in original)). His attempt to differentiate is also puzzling as Father presented testimony concerning Stepmother's family that reside in Northampton County. **See** N.T., 8/6/24, at 178-179.

While the court incorrectly stated that Child's maternal grandparents reside in Florida, we find this error harmless. This singular error does not amount to an abuse of discretion and the remainder of the court's findings are well-supported in the certified record.

While maternal grandparents do not reside in Florida, Mother testified that they have a home in Bethlehem, Pennsylvania, but they are attempting to sell the home because they plan to move to Florida. **See id.** at 84-85, 129-130. She also stated that maternal grandparents bought a retirement home in Colombia and spend approximately half the year there. **See id.** Accordingly, the court correctly found that maternal grandparents see Child when they return from their home in Colombia, albeit to Pennsylvania, not Florida. **See id.** Therefore, we discern no error or abuse of discretion.

Father also contests the court's credibility findings with regard to Mother. **See** Father's Brief at 32. The court determined the parties "to be equally credible." Trial Court Opinion, 9/24/24, at 2. (unpaginated). Father emphasizes two instances where Mother provided "explicitly false testimony." Father's Brief at 36. Accordingly, Father argues that the court's determination

that the parties were equally credible is not supported by the record. ***See id.***
at 36-37.

In the first instance, Father takes issue with Mother's testimony on
direct examination that she had never been fired from any employment. ***See***
N.T., 8/6/24, at 11. On cross examination, Father aimed to discredit Mother,
as follows:

> Q: Isn't it true that you were terminated from Lehigh University
> for using a school's credit card for personal expenses?
>
> A: Yes. There was a debate on that. So I was -- I will say yes, in
> the sense that -- yes, I had to separate from the university.

N.T., 8/6/24, at 114.

In the second instance, Father contends Mother lied about when her
relationship with Stepfather began. On direct examination Mother stated the
following:

> Q: And how long have you been with [Stepfather]?
>
> A: Since 2021.
>
> Q: And how long have you resided with [Stepfather]?
>
> A: 2021.

***Id.*** at 87. On cross examination, she testified to the following:

> Q: Isn't it true that [during the July 2020 custody trial], you were
> already pregnant with [C.B.]?
>
> A: I've known [T.B.] for over 11 years. And I conceived right --
> yes, before 2021. But when we're speaking to introducing [Child]
> to [Stepfather] and the family and that involvement piece, it was
> 2021.

Q: But you were actually romantically involved with [Stepfather] even before you moved out of [Father's] house; isn't that accurate?

A: Yes.

*Id.* at 132.

Importantly, neither instance relates to a significant finding made by the trial court in its custody decision, and there is no indication in the certified record that Mother repeatedly provided allegedly false testimony. Further, it is not clear that Mother is "lying" as Father argues in his brief. **See** Father's Brief at 37. In both examples, on cross examination, Mother attempts to clarify what she said and provide additional context. In the first instance, Mother makes a distinction between "termination" and "separation," and no more details are provided. In the second, on direct examination Mother stated she has "been with" Stepfather since 2021, and once again does not provide anything additional. At worst, her testimony begs more questions but does not signify that she was providing false testimony. Accordingly, we decline to find that the trial court erred in its determination that the parties were equally credible.

In his final issue, Father baldly asserts that the trial court's decision to award Mother primary physical custody was in violation of 23 Pa.C.S.A. 5328(b), which provides the following:

**(b) Gender neutral.** -- In making a determination under subsection (a), no party shall receive preference based upon gender in any award granted under this chapter.

*See* Father's' Brief at 37; 23 Pa.C.S.A. § 5328(b).  To support his contention, Father references the court's persistent desire to have the parties stipulate to evidence that it believed to be equal between them.  *See* Father's Brief at 37-44.  Further, Father claims that, at three off-the-record conferences, "it was suggested that Father should be the one to agree to settle for Mother's having primary custody."  *Id.* at 42.  Following the final conference, Father's counsel stated, "I don't want my client to be compelled into settling."  N.T., 8/6/24, at 209.  Father concludes that, because "the trial court's decision was *not* supported by the record," the court must have "made a prejudicial decision to award custody to Mother, a woman, without any true and genuine consideration of the evidence presented."  Father's Brief at 44 (emphasis in original).

In its Rule 1925(a) opinion, the court stated that it was "perplexed by this claim, since neither party was given a 'preference based upon gender.'"  Trial Court Opinion, 9/24/24, at 2 (unpaginated).  Indeed, Father's argument appears to be a baseless attempt to import gender bias where the record demonstrates none.  A thorough review of the certified record finds absolutely no indication that gender was even an implicit consideration in the trial court's custody decision.  Father ultimately concedes that the court did not make "any arguably gender-biased statements."  Father's Brief at 44.

Although Father refers to a colloquy between himself and the court regarding why he consented to Mother's relocation in October 2021, nothing

in the certified record indicates that the court held this against Father in making its custody determination. Even more, in response to Father's contention that he was being compelled into settlement, the court stressed that it was not trying to compel Father into settling and, out of an abundance of caution, stated that the court would no longer participate in settlement discussions with counsel. *See* N.T., 8/6/24, at 209-211. Accordingly, Father's final argument fails.

Based on the foregoing, we conclude that the trial court did not abuse its discretion or err as a matter of law in awarding Mother primary physical custody. Accordingly, we affirm the August 15, 2024 order of the trial court.

Order affirmed.

Judge Lane joins the memorandum.

Judge McLaughlin concurs in the result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/10/2025