J-A04036-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| DREW DOLDER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KRISTIN HOLZMANN | : | No. 1155 MDA 2025 |

Appeal from the Order Entered July 25, 2025
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
202312808

BEFORE:  PANELLA, P.J.E., KING, J., and LANE, J.

MEMORANDUM BY LANE, J.:                    **FILED: MAY 27, 2026**

Drew Dolder ("Father") appeals from the order which denied his requests for modification of the existing custody order and to relocate to South Carolina with the minor children he shares with Kristin Holzman ("Mother"), namely, D.D. (born in 2016) and K.D. (born in 2017) (collectively "the Children").  After careful review, we vacate the order and remand for further proceedings.

The parties, who were never married, separated in December 2021, and agreed to share custody of the Children on a fifty-fifty basis.  In October 2023, Mother committed her third DUI offense and was thereafter incarcerated.  Father initiated these custody proceedings in December of 2023, by filing a complaint in custody seeking shared legal and primary physical custody of the Children.  The trial court granted Father temporary primary physical custody, with Mother having supervised periods of partial physical custody.  Mother was

released from incarceration in January 2024, and spent two weeks in inpatient rehabilitation. Mother then completed six months of out-patient rehabilitation. Mother's driver's license was suspended for eighteen months, and she will remain on parole until 2028.

The parties ultimately came to an agreement regarding custody of the Children whereby the parties would share legal custody, Father would have primary physical custody, and Mother would have periods of partial physical custody to be supervised by various approved individuals. Mother's periods of supervised partial physical custody were not subject to a specific schedule; rather, they were to be arranged by the parties. The trial court approved the parties' custody agreement and entered it via a court order on March 18, 2024.

Father is currently disabled as a result of a car accident which occurred in November 2021, and he has since been unemployed. *See* N.T., 7/8/25, at 11-12. Father is now married, and presently lives in Drums, Pennsylvania, with his wife and the Children. *See id*. at 4. Mother lives approximately three to four miles away from Father, and she works several days per week at a restaurant. *See id*. at 50, 111. Mother explained that she spends periods of partial physical custody with the Children (supervised by maternal grandmother) on Thursdays after school, and all day on Sundays and Mondays, since the Children do not have school on Mondays. *See id*. at 114, 117-18. Mother explained that these periods of supervised partial physical custody with the Children include overnight visits. *See id*. at 118. Mother

- 2 -

further testified that she attends the Children's softball games, as well as their softball practices, if she is not working. *See id*. at 99-100. Mother also attends the Children's dance recitals, gymnastics competitions, and cheerleading events. *See id*. at 101-03. Father indicates that Mother and the Children have a FaceTime call every night when the Children are with Father. *See id*. at 19.

In March 2025, Father filed a notice of proposed relocation, seeking to relocate with the Children to York County, South Carolina. Mother filed a counter-affidavit objecting to Father's relocation request, and objecting to any modification of custody. In May 2025, Father filed a petition for modification of the custody order. In August 2025, Mother filed a petition for modification of the custody order. The trial court conducted a two-day hearing on July 8, 2025, and July 11, 2025. On the second day of the hearing, the trial court conducted an in camera interview of the Children, and did not address the parties in open court or reach any decision regarding modification of custody or Father's request for relocation at the conclusion of the hearing. *See* N.T., 7/11/25, at 1-35.

On July 25, 2025, the trial court entered an order which denied Father's request to relocate to South Carolina. *See* Order, 7/25/25, at 10. Although the order acknowledged that Father had filed a petition for modification, the order seemingly denied the motion insofar as it sought relocation. *See id*. at 10-11. The order provided that the parties shall continue to follow the terms

of the March 18, 2024 custody order. *See id*. at 11. The order did not mention, nor provide any ruling in relation to, Mother's separate petition for modification.[1] With respect to Father's proposed relocation, the trial court explained its consideration of the ten relocation factors set forth in 23 Pa.C.S.A. § 5337(h). However, despite the pendency of the two petitions for modification of custody, the trial court's order did not reference or discuss any of the sixteen custody factors set forth in 23 Pa.C.S.A. § 5328(a). Father filed a timely notice of appeal, along with a contemporaneous concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court thereafter authored an opinion pursuant to Rule 1925(a)(2)(ii).[2]

Father raises the following issues for our review:

A. Under [section] 5337(h)(3), did the trial court abuse its discretion by failing to consider the testimony of Mother's parole officer, and the testimony presented by Mother, which indicated that Mother's limited involvement with the Children is not a product of geography, but of her own instability?

B. Under [section] 5337(h)(6), did the trial court abuse its discretion by failing to recognize that relocation would

---

[1] While we acknowledge that the trial court's ruling that the parties shall follow the terms of the March 18, 2024 custody order could be viewed as an implicit denial of Mother's petition for modification, we decline to grant such an inference where, as here, the trial court did not acknowledge that Mother had filed a petition for modification. Nonetheless, given our disposition, we merely note that Mother's petition appears to remain pending.

[2] In its opinion, the trial court determined that certain of Father's issues, as presented in his concise statement, were waived because they were vague, overly broad, and lacking in specificity. *See* Trial Court Opinion, 9/3/25, at 3-4. With respect to Father's remaining issues, the trial court referred this Court to its July 25, 2025 order. *See id*. at 4.

meaningfully and substantially enhance Father's quality of life, thereby promoting the Children's best interests?

C. Under [section] 5337(h)(7), did the trial court abuse its discretion by failing to recognize that relocation will provide the Children with a richer, healthier, and more supportive lifestyle, including extended outdoor and athletic opportunities, robust paternal family support, better educational opportunities and both a continuation and expansion of the activities Father already unilaterally organizes and finances?

D. Under [section] 5337(h)(8), did the trial court abuse its discretion by failing to consider Father's unrefuted evidence about his central role in the Children's activities and the lack of credible support for Mother's claimed network in Pennsylvania?

Father's Brief at 15 (unnecessary capitalization omitted, some capitalization added).

We review Father's issues on appeal according to the following standard and scope of review:

Our standard of review over a custody order is for a gross abuse of discretion. Such an abuse of discretion will only be found if the trial court, in reaching its conclusion, overrides or misapplies the law, or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias, or ill-will as shown by the evidence of record.

In reviewing a custody order, we must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the trial court who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

***Rogowski v. Kirven***, 291 A.3d 50, 60-61 (Pa. Super. 2023) (cleaned up).

Child custody actions are governed by the Child Custody Act ("Act"), 23 Pa.C.S.A. §§ 5321-5340. The paramount concern in a child custody case is the best interests of the child based on consideration of all factors that legitimately affect the child's physical, intellectual, moral, and spiritual wellbeing. ***See Landis v. Landis***, 869 A.2d 1003, 1011 (Pa. Super. 2005). When awarding any form of custody, the trial court is required to consider the child's best interests pursuant to the following sixteen factors set forth in section 5328(a):

> **(a) Factors.**--In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving substantial weighted consideration to the factors specified under paragraphs (1), (2), (2.1) and (2.2) which affect the safety of the child, including the following:
>
> (1) Which party is more likely to ensure the safety of the child.
>
> (2) The present and past abuse committed by a party or member of the party's household, which may include past or current protection from abuse or sexual violence protection orders where there has been a finding of abuse.
>
> (2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).
>
> (2.2) Violent or assaultive behavior committed by a party.
>
> (2.3) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party if contact is consistent with the safety needs of the child.

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life, except if changes are necessary to protect the safety of the child or a party.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's developmental stage, maturity and judgment.

(8) The attempts of a party to turn the child against the other party, except in cases of abuse where reasonable safety measures are necessary to protect the safety of the child. A party's reasonable concerns for the safety of the child and the party's reasonable efforts to protect the child shall not be considered attempts to turn the child against the other party. A child's deficient or negative relationship with a party shall not be presumed to be caused by the other party.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child or self from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).[3]

The requirement that the trial court consider each of the sixteen custody factors set forth in section 5328(a) is not limited to the initial award of custody over a child. Instead, our courts have ruled that the trial court must also consider and evaluate each of the section 5328(a) custody factors when presented with a request to modify any prior award of custody. **See E.D. v. M.P.**, 33 A.3d 73, 80 (Pa. Super. 2011) (holding that when deciding a petition to modify custody, a court must conduct a thorough analysis of the best interests of the child based on the section 5328(a) factors); **see also** 23 Pa.C.S.A. § 5338(a) (pertaining to modification of custody orders and requiring that the modification must "serve the best interest of the child"). The need for such a review every time a custody order is modified is because "child custody orders are temporary in nature and always subject to change if

---

[3] Our General Assembly amended section 5328(a) on June 30, 2025, with an effective date of August 29, 2025. As the subject proceedings occurred before the effective date of the amendments, they did not apply here. **See R.M. v. J.S.**, 20 A.3d 496, 513 n.15 (Pa. Super. 2011) (declining to apply the revised version of a statute in proceedings that concluded in the trial court several months prior to the effective date of the at-issue legislation).

new circumstances affect the welfare of a child." **Holler v. Smith**, 928 A.2d 330, 331-32 (Pa. Super. 2007) (unnecessary capitalization omitted).

Additionally, when a custodial party seeks to relocate a child's residence, and the proposed relocation would result in a change in custody, the trial court must consider all of the sixteen custody factors in section 5328(a) as well as all of the relocation factors set forth in section 5337(h). **See A.V. v. S.T.**, 87 A.3d 818, 822-23 (Pa. Super. 2014). "A court should avoid dissociating the issue of primary custody from the issue of relocation, and should . . . decide the two issues together under a single umbrella of best interests of the children." **S.S. v. K.F.**, 189 A.3d 1093, 1098 (Pa. Super. 2018) (citations omitted and formatting altered).

The section 5337(h) relocation factors provided by of the Act are as follows:

> **(h) Relocation factors**.—In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:
>
> (1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.
>
> (2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.
>
> (3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial

circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S.A. § 5337(h). The party seeking relocation has the burden of proving that relocation will serve the best interests of the child in light of these ten factors. *See* 23 Pa.C.S.A. § 5337(i)(1). Further, "[e]ach party has the burden of establishing the integrity of that party's motives in either seeking the relocation or seeking to prevent the relocation." 23 Pa.C.S.A. § 5337(i)(2).

After the trial court has reached a decision regarding custody, the court must delineate the reasons for its custody decision either on the record in open court, or in a written opinion or order. *See* 23 Pa.C.S.A. § 5323(d).

However, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." ***M.J.M. v. M.L.G.***, 63 A.3d 331, 336 (Pa. Super. 2013).

On appeal, Father challenges the trial court's order denying his requests for modification of the existing custody order and to relocate to South Carolina. Father seeks a ruling from this Court to reverse and vacate the trial court's order. Father submits that the trial court abused its discretion when it considered and weighed certain of the section 5337(h) relocation factors. However, before addressing the merits of Father's issues, we must determine whether the trial court committed an error of law when issuing its custody ruling.

As explained above, we review a custody order for a gross abuse of discretion, such as where the trial court, in reaching its conclusion, overrides or misapplies the law. ***See Rogowski***, 291 A.3d 50, 60-61. We may reject the conclusions of the trial court only if they involve an error of law or are unreasonable in light of the sustainable findings of the trial court. ***See id***.

Based on our review, we conclude that, when entering the subject custody order, the trial court violated sections 5328(a) and 5338(a) of the Act. Here, as the trial court acknowledged, Father filed a petition for modification, seeking that the existing custody order be modified and that he be permitted to relocate to South Carolina. ***See*** Trial Court Opinion, 9/3/25,

at 2. Implicit in Father's petition for modification was his clear expectation that, if his relocation request was granted, his periods of primary physical custody would be significantly increased and that Mother's existing periods of supervised partial physical custody would be significantly decreased. ***See*** Petition for Modification, 5/19/25, at 1 (referencing Father's notice of proposed relocation, which was attached thereto as Exhibit B); ***see also*** Notice of Proposed Relocation, 3/31/25, at unnumbered 3 (proposing that Mother's weekly periods of supervised physical custody be reduced to "the summer and any other extended breaks from school, based on the availability of her supervisors" and when "she comes to South Carolina"). The record reflects that Mother also filed a petition for modification of the custody order. Thus, these competing petitions for modification of the existing custody order, without more, required the trial court to consider each of the sixteen section 5328(a) custody factors. ***See E.D.***, 33 A.3d at 80 (holding that when deciding a petition to modify custody, a court must conduct a thorough analysis of the best interests of the child based on the section 5328(a) factors); ***see also*** 23 Pa.C.S.A. §§ 5323(a), 5328(a).[4]

The fact that Father also sought permission to relocate to South Carolina did not excuse the trial court from considering the sixteen section 5328(a)

---

[4] Notably, in her pretrial brief, Mother discussed each of the sixteen section 5328(a) custody factors. ***See*** Mother's Pretrial Brief, 6/23/25, at 10-20. Additionally, at trial, Father's counsel elicited testimony from Father regarding each of the section 5328(a) custody factors. ***See*** N.T., 7/8/25, at 28-37.

custody factors. **See S.S.**, 189 A.3d at 1098 (holding that a court should avoid dissociating the issue of primary custody from the issue of relocation, and should decide the two issues together under a single umbrella of best interests of the children). Instead, Father's request to relocate to South Carolina, which would have resulted in a change in custody, required the trial court to consider the sixteen section 5328(a) custody factors **in addition to** the ten section 5337(h) relocation factors. **See A.V.**, 87 A.3d at 822-23 (holding that if the proposed relocation would result in a change in custody, the court must consider all of the sixteen custody factors in section 5328(a) as well as all of the relocation factors set forth in section 5337(h)).

The need for the trial court to consider all of the sixteen section 5328(a) custody factors was particularly critical in this case, where both parties contemplated that that Father's proposed relocation to South Carolina would result in an increase in Father's periods of primary physical custody, and a corresponding decrease in Mother's periods of partial physical custody.

In sum, because the trial court erred by not considering any of the section 5328(a) custody factors when addressing the parties' competing petitions for modification and Father's request to relocate to South Carolina with the parties' minor Children, we are constrained to vacate the trial court's order, and to remand the matter for further proceedings.

Order Vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 05/27/2026